Carl WILBURN v. STATE of Arkansas

CR 93-1070                          876 S.W.2d 555

Supreme Court of Arkansas
Opinion delivered May 16, 1994

74

*Gary Vinson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Carl Wilburn, appellant, and Malone Burns were jointly charged with aggravated robbery of the Super 8 Motel in Batesville. Appellant filed a motion for severance, which was granted, and the two men were tried separately. The jury found appellant guilty and fixed his sentence, as a habitual offender, at fifty years. We affirm the judgment of conviction.

Appellant first argues that the trial court erred in denying his motions to suppress. He contends that Thomas Henderson, a deputy sheriff, lacked probable cause to stop his car and that Henderson's subsequent identification of appellant was not reliable. The facts surrounding the stop were as follows. The deputy sheriff was on State Highway 167 near Pleasant Plains when he received a radio alert that the motel in nearby Batesville had been robbed by two men, one tall and one slim, approximately 5'7" to 5'9", who were wearing ski masks and armed with a shotgun and a handgun. The deputy testified that while his police car was in a well-lighted area he observed a blue and white Cadillac travelling south. The deputy followed the car, checked its license plate by police radio, and learned that the license plate was issued for a Chevrolet. He turned the police car's blue lights on and continued to follow the Cadillac. The Cadillac continued on south for about a half mile before it pulled over. The deputy turned on his take-down lights and his spotlights, turned his headlights on

bright, and stopped about ten feet behind the Cadillac. The deputy got out of his car, stood by the front left wheel of the police car, and called to the driver of the Cadillac to get out of his car. The driver of the Cadillac turned, looked over his shoulder, and sped off. The deputy later testified that his proximity to the Cadillac and the brightness of his lights had enabled him to get a clear view of the driver.

The deputy pursued the Cadillac for two miles, where it turned into a driveway, went into a yard, and struck a tree. Two men got out of the car and ran behind a house. One was carrying a shotgun and the other was holding a handgun.

The next morning, after learning that the State Police were pursuing a stolen car, the deputy sheriff went to the area of the chase. Shortly after the State Police stopped the stolen car, the deputy sheriff observed the man they had arrested, and immediately identified him as the man he had stopped the night before.

██ Appellant sought to suppress the evidence incident to the initial stop, and the later arrest, on the ground that the stop was invalid. The trial court correctly refused to grant the motion to suppress. The deputy sheriff had discovered that the Cadillac bore a license plate which was issued for a Chevrolet before he made the initial stop. It is a misdemeanor to display a license plate on a vehicle when the license plate is not issued for that vehicle. *See* Ark. Code Ann. § 27-14-306 (Repl. 1994). Thus, the officer had reasonable cause to believe that the driver of the Cadillac was committing a violation of the law in his presence. In addition, when appellant was arrested the next morning, he was driving a stolen vehicle. When an officer has reasonable cause to believe that a person has committed a violation of the law in his presence, he may make a warrantless arrest. Therefore, the trial court correctly ruled that both the stop and the arrest were valid. A.R.Cr.P. Rule 4.1(a)(iii).

██ The motion to suppress the officer's identification of appellant is a reliability argument. In determining whether an identification is reliable, a trial court should consider the following factors: (1) the witness's opportunity to view the suspect when the crime was committed, (2) the witness's degree of attention, (3) the accuracy of the prior description, (4) the level

of certainty, and (5) the time which lapsed between the crime and the subsequent identification. *Chism* v. *State*, 312 Ark. 559, 853 S.W.2d 255 (1993). In reviewing a trial court's decision to admit an identification, we make an independent review of the totality of the circumstances, and we will not reverse the trial court's ruling unless it is clearly erroneous. *Id.* at 570, 853 S.W.2d at 261.

■ We find that the totality of the circumstances supports the admission of this identification. During the initial stop, the deputy sheriff observed appellant from a distance of about fifteen feet, aided by take-down lights, spotlights, and high-beam headlights shining from the police car. Only twenty-four hours lapsed between this observation of appellant and his arrest, at which time the deputy immediately identified appellant.

Appellant next argues the trial court erred in allowing the State to introduce records that belonged to the motel. The facts are as follows. The State sought to show by Mary Gilpin, who had been the manager of the motel at the time of the robbery, the exact amount of money taken. Her testimony was important because it would show that $465 was taken in the robbery, which was the exact amount of money appellant and Malone Burns together had when they were arrested. Gilpin testified that she had been the manager of the motel on the night of the robbery and that a few hours after the robbery she took the motel's money verification records and determined the amount taken in the robbery. Appellant objected, arguing that the State was unable to lay a proper foundation because Gilpin was no longer the manager of the motel and no longer the custodian of the records. Appellant also argued that the records were inadmissible hearsay. The trial court overruled the objection, finding that Gilpin was qualified to testify about the foundation, as she had made the notations on the records, and finding that the records were admissible under the business records exception to the hearsay rule. On appeal, appellant argues Gilpin "had no knowledge as to the status of the records from the time she left the . . . motel."

■■ The records are hearsay because they are written assertions made out of court, which were offered in evidence to prove the date and the amount of money which was taken. *See* A.R.E. Rules 800 and 801. Rule 803(6) of the Arkansas Rules

of Evidence provides an exception to the hearsay rule and defines admissible documents as follows:

> *Records of regularly conducted business activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, *all as shown by the testimony of the custodian or other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph indicates business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

A.R.E. Rule 803(6) (emphasis added). As the Rule indicates, a foundation must be laid for the admission of a business record, and the elements of the foundation must be shown by testimony of the custodian or other qualified witness. *Branscomb* v. *State*, 299 Ark. 482, 774 S.W.2d 426 (1989). Appellant's argument that Gilpin had "no knowledge of the records from the time she left Super 8 motel" is an assertion that she was not a qualified witness. The law of this State reflects Professor Weinstein's observation regarding the interpretation of this Rule, that "[t]he phrase 'other qualified witness' should be given the broadest interpretation; he need not be an employee of the entity so long as he understands the system." 4 Jack B. Weinstein and Margaret M. Berger, *Weinstein's Evidence* ¶803(6)[02] at 803-178 (1984). *See also Mitchael* v. *State*, 309 Ark. 151, 828 S.W.2d 351 (1992); *Terry* v. *State*, 309 Ark. 64, 826 S.W.2d 817 (1992); *Cates* v. *State*, 267 Ark. 726, 589 S.W.2d 598 (Ark. App. 1979).

■■ The State established that Gilpin was the manager of the motel at the time she determined the amount of cash taken in the robbery, that she was the custodian of the records at that time, and that they fairly and accurately represent all of the records from which she figured the loss. A trial judge has discretion in determining the qualification of witnesses, and we will not disturb the trial court's ruling absent a showing of abuse of

that discretion. *Cates*, 267 Ark. at 728, 589 S.W.2d at 599. The trial court did not abuse its discretion in this ruling.

In his final assignment, appellant contends that the trial court erred when it refused to grant a mistrial after the prosecutor referred to Malone Burns as a co-defendant. The argument is without merit. It was undisputed that two men committed the robbery. The prosecutor referred to Burns as a defendant or co-defendant four times during the State's opening statement. There was no objection. A fingerprint examiner testified without objection that he did not find any evidence of fingerprints of either "defendant." An employee of the motel testified that "two defendants" robbed the motel. The eighth time Burns was referred to as a "co-defendant," appellant objected and asked for a mistrial. The trial court sustained the objection, but refused to grant a mistrial.

The argument is procedurally barred. A party who does not object to the introduction of evidence at the first opportunity waives such an argument on appeal. *Ferrell* v. *State*, 305 Ark. 511, 810 S.W.2d 29 (1991). The policy reason for the rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *See John Cheeseman Trucking, Inc.* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993). A party cannot sit back and allow a reference or statement to be made seven times without objection, and then on the eighth time the reference or statement is made, seriously contend that, all at once, the statement is so harmful that a mistrial is mandated.

Affirmed.