Billy Richard MARTS II *v.* STATE of Arkansas

CR 97-1212 968 S.W.2d 41

Supreme Court of Arkansas
Opinion delivered April 23, 1998

*John Wesley Hall, Jr.,* for appellant.

*Winston Bryant,* Att'y Gen., by: *Mac Golden,* Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Billy Richard Marts II appeals the judgment of the Sebastian County Circuit Court convicting him of possession of a contr olled substance (methamphetamine) with intent to deliver, a Class Y felony, and possession of drug paraphernalia, a Class C felony, and sentencing him to concurrent terms of life and three years' imprisonment, respectively. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant raises three points for reversal, contending that the trial court erred (1) in admitting into evidence a statement given by Appellant and a notebook seized from him at the time of his arrest; (2) in allowing an officer to testify as to the ultimate issue of whether Appellant had possessed the drugs with the intent to deliver them; and (3) in denying Appellant's motion for directed verdict on the issue of the weight of the drugs. We find no error and affirm.

The record reflects that on December 13, 1996, Detective Wayne Barnett of the Fort Smith Police Department, Narcotics Division, received a tip from a confidential informant (CI) that a person named "Bo" was going to make a trip to Dallas, Texas, to pick up a large quantity of methamphetamine, and that he would be returning to Fort Smith either that night or the following morning. The following day, Barnett received information from the CI that "Bo" was back in town, that he was in possession of a large quantity of methamphetamine, and that he was on his way to

a tire shop located on 6th Avenue in Fort Smith. The CI told the officer that "Bo" would be carrying the drugs in the inside pocket of his coat, and that he would be driving a red extended-cab GMC pickup truck that had a big blue air compressor on the back of it. The CI also gave the officer the license plate number of the truck. Barnett then informed other officers to be on the lookout for the vehicle. Shortly thereafter, one of the other officers spotted the vehicle and stopped it.

When Barnett arrived, he told the suspect, later identified as Appellant, that he had reason to believe that he was in possession of a large quantity of methamphetamine. Barnett observed that Appellant's coat was sagging down on one side, as if something heavy was in the pocket. Barnett reached inside the pocket and pulled out a Payless Cashways sack that contained a large amount of suspected methamphetamine and a glass pipe with burnt residue on it. When Barnett asked Appellant how much was in the bag, Appellant replied, "about a pound." Appellant was subsequently charged with and convicted of possession of methamphetamine with intent to deliver and possession of drug paraphernalia and was sentenced to life imprisonment.

### Discovery Violations

For his first point for reversal, Appellant argues that the trial court erred by admitting into evidence an oral statement given by him and a notebook seized from him on the date of his arrest. Appellant contends that he was not provided discovery of this evidence prior to trial, despite the fact that he had filed a motion pursuant to A.R.Cr.P. Rule 17.1. We do not reverse on this point, as Appellant did not raise this issue at the first opportunity, nor has he demonstrated that he was prejudiced by the evidence.

A party who does not object to the introduction of evidence at the first opportunity waives such an argument on appeal. *Wilburn v. State*, 317 Ark. 73, 876 S.W.2d 555 (1994). The policy reason for this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Id.* Similarly, objections to discovery violations must be made at the first opportunity in order to pre-

serve them for appeal. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996); *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996).

Here, Appellant filed a pretrial motion to suppress the evidence, including any and all statements made by him at the time of his arrest. A suppression hearing was conducted on the morning of the trial, during which Detective Barnett testified that he had read Appellant his *Miranda* rights and had proceeded to interview him about the possibility of cooperating with police in drug investigations. Barnett stated that Appellant indicated that he would consider working with the police if Barnett would agree to (1) shred the statement-of-rights form and all other paperwork on Appellant's case, (2) return the pound of "crank" to Appellant, and (3) release Appellant without filing any charges against him. Barnett stated that he did not agree with those conditions; he then terminated the interview and booked Appellant. At no point during direct examination of Barnett, or at any other time during the suppression hearing, did Appellant object to the statement on the ground that he had not been provided discovery of it. To the contrary, Appellant's sole argument for suppression of the evidence was the lack of reliability of the confidential informant.

Likewise, when the officer took the stand during trial, Appellant only objected to the alleged discovery violations after some prodding from the trial court. That colloquy is as follows:

MR. WATSON:

Q. Okay. Detective Barnett, did you read him his rights?

A. Yes, I did.

Q. And did he go over the rights form with you?

A. Yes, I [sic] did. I have it here.

Q. Did he sign that?

A. No, he initialed beside each one of them, which is kind of — goes into what he said to me and why he said it or how he said it to me. With this — with an Interrogation, Advice of Rights Form, that I read to somebody, whenever I sit down and read them their rights, I ask them several questions or a couple of questions —

THE COURT: Let's come up just a moment.

. . . .

THE COURT: Why are we going into this when there weren't any statements made?

MR. WATSON: Well, he did make some statements, after initialling, you know, that he would cooperate with the police if they would, in turn, give him the drugs back and —

THE COURT: Oh, okay.

MR. WATSON: — and remove all evidence that he was being arrested.

THE COURT: Mr. Settle, you didn't move to strike any statements he made or suppress, I mean?

MR. SETTLE: Well, of course, I moved to suppress all evidence seized, and that would include the statement, Your Honor —

THE COURT: All right.

MR. SETTLE: — because it was seized following the arrest, which we have contended was —

THE COURT: All right.

MR. SETTLE: — illegal.

THE COURT: All right. Okay.

MR. SETTLE: See what I'm saying.

THE COURT: Well, I didn't get that from your motion, but that's fine.

MR. SETTLE: It would have to be, Your Honor, because the initial stop is illegal.

THE COURT: Well, you're not saying there was anything wrong with the advice of rights, you're just saying they just should never should have stopped him, to begin with?

MR. SETTLE: Right. *But since you brought it up, Your Honor, I would notice you that I have not seen a copy of this*; it's not in the prosecutor's file, and there's a lot of information that is not in the prosecutor's file, if I'm not mistaken, and I believe I filed my motion for discovery several weeks ago.

THE COURT: Well, Mr. Settle, you didn't follow up on it.

MR. SETTLE: I don't believe that's my responsibility. I believe that, you know, the State takes great pride in having an open-file policy. That's just wonderful, but if it's not in their file, then it's not available to defense counsel. Again, these files —

THE COURT: I didn't call you up here to discuss discovery, Mr. Settle. I called you up here to find out, I didn't think any —

MR. SETTLE: I understand that, Your Honor, but I just want to tell the Court that I'm going to object to the statement of rights form because it was not in the prosecutor's file. It's not been made available to me.

MR. WATSON: Your Honor, any documents or police reports, that I'm going to refer to, today, the Advice of Rights Form, to my knowledge, has been in the State's file for at least a period of two months.

MR. SETTLE: I didn't see it yesterday among the things that I —

THE COURT: Mr. Settle, if you want to make a discovery objection about it, you may be [sic] so, but I'm going to hold that you weren't diligent.

. . . .

MR. SETTLE: Your Honor, let me put it to you this way, in all candor, it's not so much that I care about the right's form, but there may be other items, that I know were not in the State's file, and that's what I'm concerned about, and that may be coming down the pike, and that's what I'm concerned with, if the Court really wants to know.

MR. WATSON: If you'd like to take a recess, I can show him everything I have, just to make sure.

THE COURT: Let's move along. [Emphasis added.]

It is thus apparent that Appellant's discovery objection was that the statement-of-rights form was not in the State's file prior to trial; Appellant did not argue that he had no knowledge or notice of the statement itself. It is equally apparent that his objection was actually directed to making sure that the State's file did

not contain any surprises that may have been brought up at a later time. Moreover, when asked by the trial court if he wanted a hearing on the issue, defense counsel did not indicate that such a hearing was necessary.

■ ■ We are persuaded by the trial court's reasoning that a defendant must be diligent in raising objections to alleged discovery violations. The fact that Appellant chose to wait until trial to make an objection, and then only in response to inquiries made by the trial court, demonstrates that he was not diligent in bringing the matter to the court's attention. Although we do not necessarily agree with the trial court's holding that Appellant had the duty to seek a motion to compel discovery from the State, we do agree that Appellant had the duty to bring such alleged discovery violations to the court's attention at the first opportunity. Here, the objection should have been made during the suppression hearing, prior to the beginning of the trial, so that the trial court would have had the opportunity to take such measures to protect Appellant's right to access to the State's evidence. The objection was thus not timely. The same can be said for the objection to the notebook.

Appellant argued below that the notebook, along with a printout from a calculator, seized from him at the time of his arrest was not present in the State's file prior to trial and, as such, he claimed he had no notice of the evidence. The notebook contained documentation of various dollar figures, some of which had been reduced, with initials beside them. Similarly, the calculator tape contained persons' initials written beside each one of the printed dollar figures. The State contended that the notebook was evidence on the issue of Appellant's intent to deliver the methamphetamine, as some of the initials corresponded to persons that Detective Barnett had previously arrested. As with the rights form, Barnett testified during the suppression hearing that he had seized the notebook and tape from Appellant at the time of his arrest. Barnett also described their contents during the suppression hearing. Appellant did not object to the evidence at any time during the hearing.

At trial, the State argued that, although the notebook itself was not contained in the State's file, its receipt was referred to in the police reports as "other papers." The trial court responded that defense counsel could have gone to the police evidence locker and looked at the papers had he wanted to do so, since he was put on notice that the police had recovered "other papers" from Appellant. As with the rights form, defense counsel again responded that it was not Appellant's duty to investigate such evidence, but that it was the sole responsibility of the prosecutor to provide that evidence as discovery. Again, the trial court ruled that Appellant had not been diligent in bringing the evidentiary deficiency to the court's attention, such that the trial court could have compelled disclosure of this item. The trial court ruled that because the reports indicated that such evidence had been seized, Appellant had a duty to inspect it.

█ For the reasons stated above with regard to the rights form, we conclude that the trial court did not abuse its discretion in allowing the State to present this evidence, as Appellant failed to object at the first opportunity. A defendant cannot rely on discovery as a total substitute for his or her own investigation. *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996); *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994). This is particularly true where, as here, Appellant was notified that the police had recovered some papers from him at the time of his arrest.

█ Notwithstanding the procedural defect in Appellant's argument, we would still affirm the trial court's ruling, as Appellant has failed to demonstrate that he was prejudiced by it. When evidence is not disclosed pursuant to pretrial discovery procedures, the burden is on the appellant to establish that the omission was sufficient to undermine confidence in the outcome of the trial. *Burton v. State*, 314 Ark. 317, 862 S.W.2d 252 (1993). If the prosecutor fails to comply with discovery requirements, the trial court may order compliance, grant a continuance, exclude the evidence, or order any other appropriate relief. *Id.* Though information held by police officers is imputed to the prosecuting attorney, a failure to disclose that information will not warrant a reversal of a conviction absent a showing of prejudice. *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996). Prejudice does not exist when

the defendant already has access to the information that the State did not disclose. *Id.*

 Because there was other substantial evidence to convict him of the charges, Appellant has failed to demonstrate that he was prejudiced by the admission of the evidence in question. In determining whether there was substantial proof of a defendant's intent to deliver, we need look no further than the amount of the drug recovered from the defendant's possession. *Owens v. State*, 325 Ark. 110, 926 S.W.2d 650 (1996). The chemist from the state crime lab testified that the aggregate weight of the methamphetamine was 431.9 grams. Appellant admitted to Detective Barnett that there was "about a pound" of the substance seized from him on the morning of his arrest. Possession of more than two hundred milligrams of methamphetamine gives rise to a presumption of intent to deliver. Ark. Code Ann. § 5-64-401(d) (Repl. 1997); *Owens*, 325 Ark. 110, 926 S.W.2d 650. The jury was instructed that they could consider the quantity of the drug possessed in determining Appellant's intent. Thus, because the jury determined that Appellant possessed methamphetamine in an amount in excess of the statutory presumption, the evidence is sufficient to support his conviction. *Id.*

 Accordingly, we cannot say that the admission of Appellant's statement and the notebook and calculator tape prejudiced his case to the extent that they undermined the confidence in the outcome of the case. Moreover, we cannot say that Appellant had no knowledge of the existence of this evidence, as both the statement and the notebook were taken from him. Appellant has thus failed to demonstrate that the trial court committed reversible error in permitting Detective Barnett to testify about the contents of the oral statement and the documents.

*Opinion Testimony*

For his second point for reversal, Appellant argues that the trial court erred in allowing two of the State's witnesses to testify concerning the delivery and sale of methamphetamine generally and the significance of the way in which the drugs seized from Appellant were packaged. Specifically, Appellant asserts that this

testimony was improperly elicited by the prosecutor as opinion testimony on the ultimate issue of the case — whether Appellant intended to sell the drugs.

During Detective Barnett's direct examination, the prosecutor asked him if, through his experience in the narcotics unit, he was familiar with how methamphetamine is normally bought and sold on the street. Defense counsel stated: "Objection, Your Honor." The trial court responded that the witness could testify as to how the drug is packaged whenever he finds it. Barnett then proceeded to discuss the various ways in which the drug was packaged, including common quantities in which methamphetamine is sold, with no further objection from Appellant.

Detective Paul Smith, a narcotics officer with the Fort Smith Police Department and a task force officer with the federal Drug Enforcement Administration (DEA), testified as to the significance of the quality and quantity of the drugs seized from Appellant. Specifically, the prosecutor asked Smith whether, in his experience, it is unusual to find methamphetamine sixty-seven to sixty-eight percent pure, to which Smith responded "Yes." After Smith answered the question, defense counsel stated: "Your Honor, I'm going to object to that line of questioning." The trial court overruled the objection. Later on, during Smith's direct examination, the following exchange occurred:

MR. WATSON:

Q. Mr. Smith, what is the — based on your experience, your training as a narcotics officer, what is the significance to you of a quantity of fifteen ounces or a little bit more of methamphetamine?

MR. SETTLE: Objection, Your Honor.

THE COURT: Be overruled.

MR. SETTLE: Note my exceptions, please.

A. This quantity of methamphetamine would indicate an individual, who is trafficking in methamphetamine.

. . . .

MR. WATSON:

Q. What leads you to that conclusion?

A. I'm led to that conclusion based upon two factors: one, the amount of drugs that were found or seized, and the other is the quality of the methamphetamine recovered.

▇▇▇ Appellant now argues that it was error for the trial court to allow these officers to give such opinion testimony. In both instances, however, Appellant only generally voiced objections, without ever having offered any authority or specific grounds for them. In *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996), this court made clear that a specific objection is necessary in order to preserve an issue on appeal:

> When the testimony was presented, counsel for the defense merely said "objection." The Prosecutor responded that he did not know of any basis for the objection other than that the defense did not want to hear the evidence. The Court said "overruled," and counsel did not mention a ground of objection or any authority for it. The Trial Court was thus not informed as to the nature of the objection. Absent a specific objection informing the Trial Court of the nature of the error alleged on appeal, we do not reverse. *Reams v. State*, 322 Ark. 336, 909 S.W.2d 324 (1995); *Childress v. State*, 322 Ark. 127, 907 S.W.2d 718 (1995).

*Id.* at 24, 931 S.W.2d at 78.

▇▇▇ Because Appellant failed to make a specific objection to the officers' testimony, we will not reverse. We are not persuaded by Appellant's contention on appeal that the grounds for the objections are obvious from the context in which they arose. Appellant urges that, with regard to Detective Smith's testimony, the only ground upon which he could have been objecting was that the testimony impermissibly went to the ultimate issue of the case — whether Appellant had intended to sell the drugs. It is not apparent that this argument is well taken, given the expert nature of the officer's testimony; the objection could have easily been construed to have been directed at the lack of foundation of the officer's credentials or qualifications to testify to such an opinion at all.

██ ██ Furthermore, even if this point had been preserved for our review, we would nonetheless affirm the trial court's decision to admit the testimony. The decision whether to admit relevant evidence, opinion testimony or otherwise, rests in the sound discretion of the trial court, and our standard of review of such a decision is abuse of discretion. *Nooner v. State*, 322 Ark. 87, 907 S.W.2d 677 (1995), *cert. denied*, 116 S. Ct. 1436 (1996). Rule 704 of the Arkansas Rules of Evidence provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." This court has recognized that the trend of authority is not to exclude opinion testimony because it amounts to an opinion on the ultimate issue. *See, e.g., Davlin v. State*, 320 Ark. 624, 899 S.W.2d 451 (1995); *Long v. State*, 284 Ark. 21, 680 S.W.2d 686 (1984). Such opinion testimony is admissible provided that it does not mandate a legal conclusion. *Id.* This court has previously drawn the fine distinction between an admissible opinion that "touches upon the ultimate issue" and an opinion, not admissible, that "tells the jury what to do." *Salley v. State*, 303 Ark. 278, 283, 796 S.W.2d 335, 338 (1990) (citing *Gramling v. Jennings*, 274 Ark. 346, 625 S.W.2d 463 (1981)).

██ Here, the two officers testified about their experience in the way in which methamphetamine is normally packaged and sold. Detective Smith stated that based upon his experience as a narcotics officer, the quantity of the drugs (in excess of fifteen ounces) and their quality (sixty-seven to sixty-eight percent pure methamphetamine) indicated to him an individual who was trafficking in narcotics. Such testimony was proper given that the State bore the burden of proving that Appellant had possessed the methamphetamine with the intent to deliver it. In *Heritage v. State*, 326 Ark. 839, 936 S.W.2d 499 (1996), this court upheld the trial court's decision to allow the officer's testimony concerning the normal level of purity of narcotics on the streets in that area and the market value of the drugs recovered from the defendant. This court held:

> A trial judge's ruling on relevancy issues will not be disturbed absent an abuse of discretion. *Sasser v. State*, 321 Ark.

438, 902 S.W.2d 773 (1995). It is true that the weight of the drugs creates a presumption of intent to deliver. However, since the presumption is not conclusive, the State may offer additional evidence on the issue of intent to deliver. *See also Hoback v. State,* 286 Ark. 153, 689 S.W.2d 569 (1985).

*Id.* at 847, 936 S.W.2d at 504.

██ The testimony did not mandate a legal conclusion, nor did it tell the jury what to do. It was thus within the trial court's learned discretion to allow the State to present testimony from the two officers, who were experienced in the investigation of narcotics, as to the significance of the evidence seized from Appellant.

### Directed-Verdict Motion

For his last point for reversal, Appellant argues that the trial court erred in denying his motion for a directed verdict on the issue of the weight of the methamphetamine. Appellant contends that because the chemist mistakenly testified that 111.1 grams of the total 431.9 grams was *cocaine* hydrochloride, as opposed to methamphetamine hydrochloride, the trial court erred in submitting to the jury the issue of whether the aggregate weight of the controlled substances was between 200 and 400 grams or exceeded 400 grams.

The State presented testimony from Jerry Buck, a chemist at the Arkansas State Crime Laboratory. Buck stated that he weighed and tested the drugs seized from Appellant, which were contained in three separate packages. One package weighed 220.9 grams and contained methamphetamine hydrochloride (sixty-five percent pure) and nicotinamide, a cutting agent used to make the drugs go further. Another package weighed 99.9 grams and contained methamphetamine hydrochloride (sixty-eight percent pure) and nicotinamide. The last package, with which Appellant takes issue, weighed 111.1 grams and contained methamphetamine hydrochloride (sixty-seven percent pure) and nicotinamide. The drugs had an aggregate weight of 431.9 grams. Regarding the package in question, Buck testified as follows:

A. Okay. Then, the next thing I did, after removing my sample from it, was to do a screen test on it, which is just to give me an indication of what the drug in here might be. That indicated that it was possibly either methamphetamine or amphetamine.

The next step I did on this exhibit was to do a thin-layer chromatography, which is a test where I compare known standards to my unknown, to — to see how they compare. The thin-layer showed that it was methamphetamine and that there was some nicotinamide with the methamphetamine.

The next test I did was the infra-red, which showed that — it also showed that it was methamphetamine hydrochloride with some nicotinamide present.

I then performed the mass spectra test, which is a specific test that identified methamphetamine and nicotinamide.

The next test I performed on this exhibit was the quantitative analysis, which the results, it was sixty-seven percent *cocaine* hydrochloride. [Emphasis added.]

At the conclusion of Buck's direct examination, the prosecutor asked the chemist to state the total weight of the methamphetamine, to which Buck responded that it was 431.9 grams.

Appellant moved for a directed verdict on the issue of the aggregate weight of the controlled substance. Appellant reasoned that because Buck stated, albeit mistakenly, that 111.1 grams of the drugs contained sixty-seven percent cocaine hydrochloride, there could be no question of fact that the total weight of the drugs was between 200 and 400 grams. The trial court denied the motion, stating, "I heard him say that, but I think he corrected himself later." Appellant now contends that the trial court erred in submitting the issue of the aggregate weight of the drugs to the jury. We disagree.

■■ ■■ Variances and discrepancies in the proof go to the weight or credibility of the evidence and are, therefore, matters for the factfinder to resolve. *State v. Long,* 311 Ark. 248, 844 S.W.2d 302 (1992). Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as factfinder to resolve any conflicts and inconsistencies; it is not for the court to resolve on a directed-verdict motion. *Id.* Here, Buck stated no

less than three times that the substance in the package in question was methamphetamine. The fact that on one occasion he mistakenly referred to the substance as cocaine does not warrant a directed verdict on the issue of the aggregate weight of the drugs. It was thus proper for the trial court to deny the motion and submit the issue to the jury.

### Rule 4-3(h)

In accordance with Rule 4-3(h) of the Arkansas Supreme Court Rules, the record has been reviewed for adverse rulings objected to by Appellant but not argued on appeal, and no such errors were found. For the aforementioned reasons, the judgment of conviction is affirmed.