2009 Ark. App. 740

**Caesar L. CLAY, Jr., Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CACR09–429.**

Court of Appeals of Arkansas.

Nov. 4, 2009.

William R. Simpson, Jr., Chief Public Defender, by: Clint Miller, Deputy Public Defender, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Laura Shue, Ass't Att'y Gen., for appellee.

WAYMOND M. BROWN, Judge.

A Pulaski County jury found appellant guilty of driving while intoxicated (DWI) on January 7, 2009. This was appellant's fifth DWI conviction within five years of his first DWI. Appellant negotiated a sentence of seven years' imprisonment to be served consecutively to the sentence imposed in CR–07–2598. Appellant argues on appeal that the trial court abused its discretion by permitting Officer Ryan Baker to testify that he believed appellant was intoxicated. We find no error and affirm.

Appellant's jury trial took place on January 7, 2009. Appellant made a motion in limine to prevent Officer Baker's testimony that he believed appellant was intoxicated. Appellant argued that the testimony answered an ultimate issue, which went to the province of the jury. The motion was denied.

Officer Kevin Webb of the Sherwood Police Department testified that he came in contact with appellant on September 2, 2007, at about 2:44 a.m. According to Officer Webb, he observed a silver Chevrolet Malibu traveling northbound in the southbound lane of Landers Road. At this time, Landers was a two-way-travel road. Officer Webb stated that he turned on his lights to stop the vehicle; however, the vehicle continued on Landers, and turned on Rixie Road. The vehicle finally stopped at Rixie and Pettis. Webb was able to make contact with appellant, the driver. Officer Webb testified that he informed appellant why he was stopped and asked him for his license, registration, and proof of insurance. Appellant just stared at Officer Webb. Officer Webb stated that he noticed the smell of intoxicants coming from inside appellant's vehicle, that he also noticed that appellant's eyes were bloodshot, and that appellant's speech was slurred. Officer Webb asked appellant for his date of birth twice before appellant gave it to him. He ran appellant's birth date through ACIC and discovered that appellant's license was revoked. At that time, he asked appellant to exit the vehicle. Appellant "swayed in a circular motion while standing." He was handcuffed for officer safety while he was patted down for weapons. Officer Webb called the police department to have someone from the Special Traffic Enforcement Program (STEP) come to assist him with appellant. Officer Webb stated that appellant posed a danger to himself and others while he was driving on the wrong side of the road. Officer Webb did not perform any type of sobriety test on appellant.

On cross, Officer Webb stated that appellant was weaving from lane to lane on the night in question. He testified that it was his personal experience that when "you can smell [intoxicants] from the car," it is usually a lot. Officer Webb acknowledged that he did not check appellant's vehicle for "any bottles of booze" after appellant had exited the vehicle.

Officer Ryan Baker of the Sherwood Police Department testified that he was working in STEP patrol on September 2, 2007, when he came in contact with appellant. According to Officer Baker, the patrol was designed for DWI. He testified that he had experience with DWI arrests, having been involved in over 1,200 such arrests. Officer Baker also stated that he had specialized training in recognizing DWIs and making arrests. Officer Baker testified that when he arrived on the scene, appellant was already in handcuffs.

According to Officer Baker, appellant was very slow and incoherent. He also stated that appellant was unsteady on his feet. Officer Baker testified, "From looking at his bloodshot, watery eyes [and] smelling what I smelled, I formed a belief relating to [appellant]. I believed he was intoxicated."

Appellant renewed his motion concerning Officer Baker's belief that appellant was intoxicated. The trial court denied the motion and Officer Baker continued with his testimony.

Officer Baker stated that appellant was not given a field sobriety test at the traffic stop because the "terrain in the area of Rixie and Pettis is not very cooperative for a standardized field sobriety test." He stated that he took appellant to the police department to perform the field sobriety tests. According to Officer Baker, he could still smell intoxicants in his police car after appellant was removed from the vehicle. Appellant was read his *Miranda* rights once at the police department. Appellant's handcuffs were removed and he was asked to perform some tests. Appellant was asked to perform the horizontal gaze nystagmus test. Even though ⌊4the test is supposed to be administered as the suspect stands with his feet together, appellant kept his feet shoulder width apart and was swaying. Appellant was asked to follow Officer Baker's finger with only his eyes; however, he would not do it. Appellant just stared blankly at the officer. When the test was explained again to appellant, appellant refused to cooperate. Officer Baker testified that appellant was argumentative, aggressive, and loud. According to Officer Baker, appellant wanted to know why he was under arrest when he had not taken a field sobriety test and why was he expected to do a field sobriety test when he was already under arrest. Appellant refused to take any field sobriety test

and refused to do anything Officer Baker wanted him to do, including take a breathalyzer test. Officer Baker stated that based on his observation of appellant on September 2, 2007, he believed appellant was a danger to himself and others if he was operating a vehicle.

On cross, Officer Baker stated that appellant was unsteady on his feet and that he had to hold appellant up so that he could search him. According to Officer Baker, that went to whether appellant was intoxicated. Officer Baker testified that he asked appellant how much he had to drink that night and appellant did not answer him. Officer Baker stated that once appellant was placed in a cell, he did not go back to see if appellant would take a field sobriety test. Officer Baker testified that he did not look in appellant's vehicle for cans of beer or anything because he was not concerned with the vehicle.

At the conclusion of the evidence, the jury was given instructions. Included in the jury's instructions was AMI Crim. 105, which states:

⌊5An expert witness is a person who has specialized knowledge, skill, experience, training or education on the subject to which his testimony relates.

An expert witness may give his opinion on questions in controversy. You may consider his opinion in the light of his qualifications and credibility, the reasons given for his opinion, and the facts and other matters upon which his opinion is based.

You are not bound to accept an expert opinion as conclusive, but should give it whatever weight you think it should have. You may disregard any opinion testimony if you find it to be unreasonable.

The jury also received AMI Crim.2d 6501, concerning the DWI charge against appellant. Intoxicated was defined as

influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant or any combination thereof, to such a degree that the driver's reactions, motor skills and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians.

In closing arguments, both sides stated that the only issue before the jury was whether appellant was intoxicated on September 2, 2007, when he was stopped by Officer Webb. The jury retired and returned with a guilty verdict. Prior to the sentencing phase, appellant negotiated a seven-year sentence to be served consecutive to his fourth DWI conviction.[1]

■ ╷The judgment and commitment order was filed on January 12, 2009. Appellant filed a pro se notice of appeal on February 6, 2009. Appellant argues on appeal that the trial court abused its discretion by allowing Officer Baker to testify that he believed appellant was intoxicated. The State contends that appellant waived his right to appeal his case and argues in the alternative that there was no abuse of discretion by the trial court.[2]

■ The decision to admit relevant evidence, opinion testimony or otherwise, rests in the sound discretion of the trial court, and the standard of review of such a decision is an abuse of discretion. *E.g.*, *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Ark. R. Evid. 704. Such opinion testimony is admissible provided that it does not mandate a legal conclusion. *Marts, supra.* In *Long v. State*, 284 Ark.

1. Subsequent to the jury's guilty verdict, the following exchange took place:
THE COURT: So what are we going to do?
PROSECUTOR: We're going to accept the offer, let him plead to seven years to run consecutive to, I believe it's 07–2598.
DEFENSE COUNSEL: Is that what you want to do, Caesar?
APPELLANT: Is that going to—
DEFENSE COUNSEL: You'll have 427 days jail credit.
APPELLANT: Yes.
DEFENSE COUNSEL: And you are not going to appeal this case since you are accepting this sentence from the prosecutor, is that right?
APPELLANT: If I am getting my jail credit, no, I am not.
DEFENSE COUNSEL: Okay.
APPELLANT: The 427 days.
DEFENSE COUNSEL: That's right. You are. You're getting that jail credit.
APPELLANT: I accept. Would it be possible for me to get this judgment and commitment order on my way back? How long will it take?
THE COURT: You can get it in a few days.
PROSECUTOR: It doesn't take more than three days.

THE COURT: Seven years, ADC, consecutive to other cases, 427 days jail credit. Defendant accepted—how should I word it? Accepted?
DEFENSE COUNSEL: Negotiated sentence.
THE COURT: Raise your right hand.
THE COURT: All right, Mr. Clay, is it your intention to accept the State's offer of seven years ADC, consecutive to your other cases with 427 days jail credit?
APPELLANT: Yes.
THE COURT: And you agree that you're not going to appeal this sentence.
APPELLANT: Yes.
THE COURT: But so you're waiving your right to appeal. You have thirty days in which to appeal this case; your attorney can help you with that. But it's your intention to waive that right.
APPELLANT: Yes.
THE COURT: Okay, anything else?
DEFENSE COUNSEL: No, sir.

2. We do not address the issue of waiver in this opinion due to the State's failure to cite any case law on the subject of waiving one's right to an appeal.

21, 680 S.W.2d 686 (1984), the supreme court held that a police officer's testimony that the defendant was intoxicated was admissible at the defendant's DWI <sub>8</sub>trial. The court reasoned that, although the testimony embraced an ultimate issue, it did not mandate a legal conclusion. *Id.* at 25, 680 S.W.2d at 688 (citations omitted).

A jury is not bound to accept opinion testimony of experts as conclusive and is not compelled to believe an expert's testimony any more than the testimony of any other witness. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226, 116 S.Ct. 1861, 134 L.Ed.2d 960 (1996). In this case, the jury was specifically instructed that it was not bound to accept an expert opinion as conclusive, but should give the opinion whatever weight it thought the opinion should have, and that it could disregard any opinion testimony if it found it to be unreasonable. Accordingly, the trial court did not err in refusing to exclude the officer's testimony concerning his opinion that appellant was intoxicated.

Affirmed.

GRUBER and BAKER, JJ., agree.