Cite as 2022 Ark. App. 388

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-21-594

| | | |
|---|---|---|
| | | **Opinion Delivered** October 5, 2022 |
| DAROYCE RODGERS | APPELLANT | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46CR-18-436] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE BRENT HALTOM, JUDGE |
| | | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Daroyce Rodgers was convicted of second-degree escape in the Miller County Circuit Court and was sentenced as a habitual offender to twenty-five years in the Arkansas Department of Correction (ADC). Because the jury found he escaped from the custody of a law enforcement agency, his conviction was classified as a Class B, rather than a Class D, felony. He appeals, arguing that there was insufficient evidence to support his conviction; that the court erred in allowing lay witnesses to provide testimony on an ultimate issue of fact; that his right to speedy trial was violated; and that the statute of limitations requires reversal. We find no merit to his arguments and affirm.

### I. *Sufficiency Argument*

Rodgers first challenges the sufficiency of the evidence to support his conviction for second-degree escape. A person commits the offense of second-degree escape if he or she, having been found guilty of a felony, escapes from custody. Ark. Code Ann. § 5-54-111(a)(2) (Supp.

2021). Second-degree escape is classified as a Class B felony if, at the time of the escape, the person is in the custody of a law enforcement agency. Ark. Code Ann. § 5-54-111(b)(1)(C). Otherwise, it is a Class D felony. Ark. Code Ann. § 5-54-111(b)(2).

Rodgers's sufficiency argument is two-fold. First, he argues that "custody" is an element of the offense and that the evidence was insufficient to prove this element; thus, he was not guilty of escape. Second, he argues that the evidence was insufficient to prove that he escaped from the custody of a "law enforcement agency"; therefore, at best, his conviction should have been classified as a Class D, not a Class B, felony.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State, consider only the evidence that supports the verdict, and affirm if substantial evidence supports it. *Collins v. State*, 2021 Ark. 35, 617 S.W.3d 701. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* With these standards in mind, we turn our attention to the evidence presented.

A. Custody

We first consider the evidence concerning custody. On March 31, 2015, a Miller County jury found Rodgers guilty of possession of cocaine with purpose to deliver, a felony. At the recommendation of the jury, the judge sentenced Rodgers to twenty years' imprisonment in the ADC. Defense counsel asked if Rodgers was being remanded to one of the court security officers, to which the judge responded in the affirmative and directed Rodgers to have a seat.

Two court security officers, Bobby Lacefield and Bobby Forte, were in the courtroom. Officer Lacefield stepped over to Rodgers and placed his hand on his arm as he transitioned

Rodgers to his seat. Instead of immediately taking a seat as directed by the court, Rodgers requested permission to hug his mother at the railing that divides the courtroom from the spectators. Officer Lacefield allowed Rodgers to approach the railing and hug his mother. Rodgers was not in handcuffs or leg restraints and that time.[1] After hugging his mother, Rodgers jumped the railing and sprinted away. Both officers attempted to capture Rodgers and were injured.[2] Rodgers was not immediately captured.

Rodgers first argues that this evidence was minimal and insufficient to prove that he was in custody at the time of the escape. He claims he was not physically restrained and was at liberty to move about. We disagree. Custody is defined as actual or constructive restraint by a law enforcement officer pursuant to an arrest or a court order. Ark. Code Ann. § 5-54-101(3)(A) (Supp. 2021). Here, Rodgers was found guilty of a felony, sentenced to incarceration, remanded to court officers, and directed by the court to have a seat. Pursuant to the order of the court, the officers were in the process of escorting Rodgers to his seat when Rodgers went to the railing to hug his mother, leaped the railing, and fled the courtroom. Viewing the evidence in a light most favorable to the State as we must do, there was sufficient evidence upon which the jury could find that Rodgers was either actively or constructively restrained.

B. Law Enforcement Agency

---

[1]Officer Lacefield testified that he was going to place Rodgers in handcuffs but waited to do so to allow Rodgers the opportunity to hug his mother first.

[2]One scraped his arm; the other rolled his ankle. Rodgers was charged with two counts of second-degree battery. At his trial, the jury acquitted Rodgers on both battery counts, so these charges are not at issue in this appeal.

Rodgers next argues that there was insufficient evidence to find that he was in the custody of a "law enforcement agency" so as to classify his second-degree escape conviction as a Class B felony. Again, we disagree.

The jury heard evidence that Officers Lacefield and Forte were employees of the court security organization for the Eighth South Judicial Circuit of Arkansas. As such, their primary job duty was to provide security to the judge and other persons in the courthouse. Both officers, however, were certified law enforcement officers with the authority to enforce all Arkansas laws within the confines of the courthouse and its grounds, to arrest someone who is violating the law (with or without a paper warrant), to patrol the interior and exterior of the courthouse, and to perform law enforcement functions, including taking custody of defendants upon sentencing. In fact, Thomas Harness, the chief of court security, testified that the main difference between his court security officers and Miller County Sheriff's deputies is that court security officers are specialized officers whose jurisdiction entails the courtroom and its surroundings.

Rodgers argues that this evidence was insufficient for the jury to find that he was in the custody of a law enforcement agency at the time of the escape. He points to the evidence that Officers Lacefield and Forte had the primary responsibility of securing the courthouse, not enforcing the law. He cites Arkansas Code Annotated section 16-10-1004 (Supp. 2021) as statutory authority that law enforcement activities are not duties of a court security officer.[3] He

_____

[3]We note that this statute is not contained in the criminal code. Rather it is a part of the Arkansas Court Security Act, which was enacted in 2007 in response to "recent incidents involving serious court security failures resulting in death or injury to judges and others in court facilities across the United States indicate that court security is an issue requiring an immediate response from this state." Ark. Code Ann. § 16-10-1002 (Repl. 2010). The purpose of the Act was to establish a general program for security and emergency preparedness for the judicial branch of government. Ark. Code Ann. § 16-10-1002. Its subsections outline the institutional

4

claims that since law enforcement was not their primary responsibility, Officers Lacefield and Forte, as court security officers, are not a part of a law enforcement agency.

Admittedly, pursuant to Ark. Code Ann. § 5-54-111(b)(1)(C), the State needed to prove that Rodgers escaped from the custody of a law enforcement agency in order to convict him of B felony classification. However, the term "law enforcement agency" is not defined in the escape statutes. At trial, Rodgers requested and received a jury instruction defining a law enforcement agency as "any police force or organization whose primary responsibility as established by statute or ordinance is the enforcement of the criminal, traffic, or highway laws of this State."[4] Rodgers does not challenge this instruction on the definition of "law enforcement agency" on appeal.[5] Thus, our review is limited to his sufficiency-of-the-evidence argument as the jury was instructed.

Since the issue before us has been framed as one challenging the sufficiency of the evidence, we must view the evidence in the light most favorable to the State. *Collins, supra.* Here, the jury heard testimony that the officers were law enforcement officers, that their primary duty was to provide security, but their duties also required them to enforce the laws in their respective jurisdiction, i.e., the courthouse and its grounds. In fact, both Officer Lacefield and Officer

---

hierarchy; provides authority for the administration of grant money for the implementation of the program; and requires court security officers to be certified law enforcement officers. Ark. Code Ann. §§ 16-10-1003 to -1006 (Repl. 2010 & Supp. 2021).

[4]This definitional instruction appears to have been fashioned on the definition of that term contained in Arkansas Code Annotated sections 12-9-301(6) (Supp. 2021) and 12-9-401(3) (Supp. 2021)—statutes dealing with the training and standards for auxiliary law enforcement officers and radar instructors and operators, respectively. The jury was provided a special verdict form that was based on this definition.

[5]In his brief, Rodgers cites other non-criminal-code definitions of "law enforcement agency"; however, he never requested the jury be instructed on these alternative definitions.

5

Forte testified that, as court security officers, one of their duties is to enforce the law in the courtroom, including the authority to arrest someone if a law is broken. A jury, as the trier of fact, determines the credibility of witnesses and is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Wright v. State*, 2022 Ark. 103, 644 S.W.3d 236; *Howard v. State*, 2016 Ark. 434, 506 S.W.3d 843. Thus, despite the arguments concerning conflicting testimony highlighted by Rodgers, there was sufficient evidence from which the jury could find that the court security officers were part of a law enforcement agency.

## II. *Lay-Witness Testimony*

Rodgers's next argument centers on the testimony of David Cotten and Thomas Harness. Cotton, one of the prosecuting attorneys in Rodgers's underlying drug-conviction trial, testified that Rodgers was in custody at the time of the escape. Harness, the chief of court security for the Eighth Judicial Circuit Court in Miller County, testified that court security officers are part of a law enforcement agency. Rodgers claims that this testimony involved the ultimate issues to be decided by the jury, and the trial court improperly allowed its admission. We review challenges to the admission or rejection of evidence under an abuse of discretion standard. *See Montgomery v. State*, 2022 Ark. App. 329, ___ S.W.3d ___.

Arkansas Rule of Evidence 701 permits lay witnesses to testify in the form of opinions or inferences as long as those opinions or inferences are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his or her testimony or the determination of a fact in issue. Ark. R. Evid. 701 (2021). Testimony in the form of an opinion or inference that is otherwise admissible is not objectionable because it embraces an ultimate issue to be

6

decided by the trier of fact. *See* Ark. R. Evid. 704; *Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Although opinion testimony on the ultimate issue is admissible, if the opinion mandates a legal conclusion or "tells the jury what to do," the testimony should be excluded. *Marts*, 332 Ark. 628, 968 S.W.2d 41 (citing *Salley v. State*, 303 Ark. 278, 796 S.W.2d 335 (1990)).

Here, David Cotton opined that Rodgers was placed in custody after his drug-conviction trial when the court remanded him to one of the bailiffs and instructed him to take a seat. Counsel objected, arguing (1) that this called for a legal conclusion that he was not qualified to offer and (2) that it lacked foundation. Counsel further claimed that his testimony essentially directed a verdict and invaded the province of the jury as a fact-finder. The court ruled that his opinion on the matter did not invade the province of the jury.

The trial court did not abuse its discretion by admitting this testimony over Rodgers's objection. As the State argues, while the testimony indicated Cotton's belief that Rodgers was in custody, it did not improperly direct the jury to find Rodgers guilty of second-degree escape. *See Pitman v. State*, 2021 Ark. App. 80, at 3–4, 618 S.W.3d 205, 207. In fact, on cross-examination, Cotton even agreed that his definition of custody was not based on the statutory definition contained in the escape statute and that the jury should rely on that definition when making its decision. Thus, the trial court did not abuse its discretion in allowing this testimony.

Rodgers also challenges the testimony of Harness, who opined that the Eighth Judicial District court security organization is a "law enforcement agency" and that court security officers are law enforcement officers. During direct examination, the State did ask Harness whether it was his opinion that his court security officers are law enforcement officers, to which he responded in the affirmative. However, on cross-examination, it was counsel for Rodgers who

7

read the applicable statutes and asked Harness's opinion on whether the duties of the court security officers fall within the statutory definition and whether the court security organization qualifies as a law enforcement agency. Thus, it was Rodgers, not the State, who elicited testimony from the witness in an attempt to direct a verdict in his favor.

Finally, as with the testimony of Cotten, Harness's testimony was helpful to provide the jury with a clear understanding of the duties and responsibilities of court security officers. It did not command the jury to find Rodgers guilty of second-degree escape. Accordingly, the court did not abuse its discretion in allowing this testimony.

III. *Speedy Trial*

Rodgers next argues that his conviction should be reversed because his speedy-trial rights were violated.[6] In addressing this argument, we provided the following relevant procedural history.

On March 31, 2015, Rodgers was found guilty at a jury trial of possession of a controlled substance. That same day, he fled the courtroom, and the State obtained arrest warrants for him. He was later captured in Texas on September 25, 2015. He spent approximately three years in a Texas prison on a parole violation. During this time, the State placed a detainer and a hold on Rodgers. Rodgers did not demand trial or request to be transferred to Arkansas to stand trial. When he completed his sentence in Texas, he was transferred to Arkansas to serve his twenty-year sentence on the possession charge. On June 27, 2018, Rodgers was served with the arrest warrants issued on March 31, 2015. He entered his first appearance on June 29, 2018. The

---

[6]On March 5, 2020, Rodgers moved to dismiss on speedy-trial grounds. The trial court denied the motions after a hearing.

8

State officially charged him with one count of first-degree escape by information filed July 13, 2018.

Rodgers claims that the trial court erred by calculating his speedy-trial time from his June 27, 2018, arrest in Arkansas, rather than on his capture in Texas on September 24, 2015. Pursuant to Rule 28.1, a defendant must be brought to trial within twelve months unless there are periods of delay that are excluded under Rule 28.3 (2018). *E.g.*, *Vasquez v. State*, 2018 Ark. App. 241, 548 S.W.3d 828. The twelve-month period for bringing an accused to trial begins to run on the date the information is filed or the date of arrest, whichever occurs first. Ark. R. Crim. P. 28.2(a) (2021); *Vasquez, supra.*

Essentially, Rodgers argues that when he was captured in Texas on September 24, 2015, the Texas authorities were aware of the outstanding warrants issued for his arrest on the offense of escape. Thus, he was arrested for escape on that date and speedy trial began to run at that time. We disagree. As the State points out in its brief, the record before us does not reflect that Rodgers was served with any Arkansas warrants on September 24, 2015, nor does it reflect that the authorities in Texas could serve a warrant issued by the State of Arkansas. Thus, speedy trial did not begin to run until the warrants were served in June 2018.

Furthermore, even if we were to assume that the capture date of September 24, 2015, is the arrest date, our de novo review supports the conclusion that no speedy-trial violation occurred. Rule 28.3(e) specifically excludes a period of delay resulting from the unavailability of the defendant from computing time for trial. A defendant shall also be considered unavailable whenever his whereabouts are known but his presence for the trial cannot be obtained, or he resists being returned to the state for trial.

Here, Rodgers was incarcerated in Texas on a parole violation. Even though Arkansas authorities knew of his whereabouts, his presence for trial could not be obtained. Pursuant to Arkansas Rule of Criminal Procedure 29.1, the State placed a detainer upon Rodgers. Rodgers had the right to request that a final disposition be made of the charges filed against him in this State. Ark. Code Ann. § 16-95-101, art. III(a) (Repl. 2016). Had he done so, the State had 180 days to bring him to trial or the charges must be dismissed. *Patterson v. State*, 318 Ark. 358, 885 S.W.2d 667 (1994).

The supreme court has placed the responsibility on the defendant to be available for trial. *White v. State*, 310 Ark. 200, 833 S.W.2d 771 (1992). An accused in prison in another state for a different crime must affirmatively request a trial in order to activate the speedy-trial rule. *Id.*; *Gillie v. State*, 305 Ark. 296, 808 S.W.2d 320 (1991). Rodgers did not demand trial or request to be transferred to Arkansas to stand trial. Accordingly, any time accruing while Rodgers was held by Texas authorities would have been excludable under Rule 28.3(3). As Rodgers does not challenge the remaining time periods excluded from the speedy-trial period, his argument fails.

IV. *Statute of Limitations*

Last, Rodgers argues that the trial court erred in failing to dismiss his charges on statute-of-limitations grounds.[7] He claims that the alleged escape occurred in March 2015, but the information was not filed until July 13, 2018—well after the three-year statute of limitations for either a Class B or Class D felony had expired. *See* Ark. Code Ann. § 5-1-109(b)(2) (Supp. 2021).

---

[7]On March 5, 2020, Rodgers moved to dismiss for lack of jurisdiction due to the statute of limitations. The trial court denied the motions after a hearing.

The statute of limitations for both Class B and Class D felonies is three years. *See* Ark. Code Ann. § 5-1-109(b)(2). For purposes of the statute of limitations, a prosecution is commenced when an arrest warrant is issued by a judge based on probable cause or an indictment, information, or other charging instrument if the arrest warrant or other process is sought to be executed without unreasonable delay.

Here, the trial court issued the arrest warrants upon probable cause on March 31, 2015, well within the three-year limitations period. It does not matter that the information was not also filed within the limitations period. There is simply no requirement that the charging instrument be filed of record within the limitations period. *See State v. Ledwell*, 2017 Ark. 252, 526 S.W.3d 1. As such, Rodgers's argument fails.

Affirmed.

VIRDEN and KLAPPENBACH, JJ., agree.

*Tinsley & Youngdahl, PLLC*, by: *Jordan B. Tinsley*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.