2011 Ark. 488

**Justin ANDERSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–1464.**

Supreme Court of Arkansas.

Nov. 17, 2011.

Jeffrey Marx Rosenzweig, Little Rock, for appellant.

Dustin McDaniel, Atty. Gen., David R. Raupp, Office of Atty. Gen., Little Rock, for appellee.

DONALD L. CORBIN, Justice.

Appellant Justin Anderson appeals the order of the Miller County Circuit Court denying his petition for postconviction relief pursuant to Ark. R.Crim. P. 37.5 (2011). We affirm the circuit court's decision to deny postconviction relief.

Anderson was tried, convicted, and sentenced to death for the murder of the elderly Clara Creech on her lawn in Lafayette County. Anderson was aged nineteen years at the time of the murder in October 2000. This court affirmed his conviction but reversed the death sentence and remanded due to errors in the jury's consideration of mitigating circumstances. *Anderson v. State,* 357 Ark. 180, 163 S.W.3d 333 (2004) (*Anderson I*). Anderson obtained a change of venue to Miller County, where a jury again sentenced him to death. This court affirmed. *Anderson v. State,* 367 Ark. 536, 242 S.W.3d 229 (2006) (*Anderson II*). This court recalled the mandate it issued in *Anderson II* to allow Anderson to file a petition for writ of certiorari in the United States Supreme Court. That petition was denied. *Anderson v. Arkansas,* 551 U.S. 1133, 127 S.Ct. 2973, 168 L.Ed.2d 707 (2007). This court reissued its mandate affirming Anderson's death sentence.

In July 2007, the circuit court stayed Anderson's execution and appointed Jeff Harrelson of Texarkana as counsel to seek postconviction relief for Anderson pursuant to Rule 37.5. With Harrelson as counsel, Anderson filed a petition and an amended petition pursuant to Rule 37.5. Harrelson also represented Anderson at the Rule 37.5 hearing held in June 2008. In August 2008, the circuit court denied the petition and entered an order reciting the court's findings of fact and conclusions of law.

Anderson timely appealed the denial of his petition, and Harrelson filed a brief that this court found to be "woefully deficient." Accordingly, this court ordered rebriefing. *Anderson v. State,* 2010 Ark. 138, 2010 WL 987046 (per curiam). This court found the subsequent brief also to be deficient, removed Harrelson as counsel, and appointed Jeff Rosenzweig to serve as Anderson's new counsel. *Anderson v. State,* 2010 Ark. 375, 2010 WL 3915289 (per curiam).

With Rosenzweig as new counsel, Anderson then filed a motion to remand and reinvest the circuit court with jurisdiction to reconsider the issue of Anderson's mental retardation. In this motion, Anderson alleged that the finding that he was not mentally retarded relied extensively on the conclusions of Dr. Charles Mallory, whose work this court had since discredited in an unrelated case, *Newman v. State,* 2009 Ark. 539, 354 S.W.3d 61. By letter order dated November 11, 2010, this court denied that motion without prejudice. By letter order dated September 8, 2011, this court also denied Anderson's subsequent motion to stay consideration of his appeal and to remand and expand appointment of counsel to pursue additional claims of ineffective assistance of counsel in the Rule 37.5 proceedings.

Rosenzweig has now filed a proper appellate brief on Anderson's behalf, pursuing three arguments for reversal. We now consider Anderson's appeal of the denial of his request for postconviction relief under Rule 37.5.

In an appeal from a trial court's denial of postconviction relief on a claim of ineffective assistance of counsel, the sole question presented is whether, based on a totality of the evidence under the standard

set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the trial court clearly erred in holding that counsel's performance was not ineffective. *Clarks v. State*, 2011 Ark. 296, 2011 WL 3136042 (per curiam); *Sparkman v. State*, 373 Ark. 45, 281 S.W.3d 277 (2008). The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. A petitioner attempting to demonstrate ineffective assistance of counsel must show that counsel's performance was deficient and that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Id.*, 466 U.S. 668, 104 S.Ct. 2052. This means that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, in that the decision reached would have been different absent the errors. *Id.; State v. Cantrell*, 2011 Ark. 449, 2011 WL 5112842. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Strickland*, 466 U.S. 668, 104 S.Ct. 2052; *Sparkman*, 373 Ark. 45, 281 S.W.3d 277. "[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052.

As his first point for reversal, Anderson contends that his trial counsel was ineffective for failing to properly pursue the issue of his mental retardation. Anderson asserts that he is mentally retarded and thus ineligible for the death penalty under the Eighth Amendment to the United States Constitution, *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Ark.Code Ann. § 5-4-618 (Repl.2006). If counsel was not ineffective, Anderson argues alternatively that subsequent developments in the unrelated case of *Newman*, 2009 Ark. 539, 354 S.W.3d 61, warrant a remand for further development of the mental-retardation issue.

The circuit court ruled that the issue of Anderson's mental retardation was rejected by the jury in his first trial and affirmed by this court in *Anderson I*. The circuit court ruled further that section 5-4-618(a)(2) and constitutional requirements were fully met. As for the allegation that counsel failed to properly investigate and present mitigation evidence, the circuit court ruled that the allegation was not supported by the record because mitigation evidence was presented at the first trial and at the resentencing and that both were quantitatively and qualitatively adequate. Finally, with respect to the allegation that counsel was ineffective for failing to properly investigate mental-health issues, the circuit court ruled that no proof was offered in this regard at the Rule 37.5 hearing.

█ At the outset, we note that Anderson does not explain in what specific way trial counsel's performance was deficient, nor does he attempt to show how such a deficient performance prejudiced his defense to such an extent that he did not receive a fair trial, both of which are required to demonstrate ineffective assistance of counsel under *Strickland*, 466 U.S. 668, 104 S.Ct. 2052. We also note that Anderson does not allege in what regard the circuit court's rulings were clearly erroneous. There is a strong presumption that the trial counsel's representation falls within the wide range of reasonable professional assistance. *Lee v.*

*State,* 2009 Ark. 255, 308 S.W.3d 596. As the petitioner, Anderson had the burden of overcoming this presumption by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.; Sparkman,* 373 Ark. 45, 281 S.W.3d 277. Conclusory statements cannot be the basis of postconviction relief. *Sparkman,* 373 Ark. 45, 281 S.W.3d 277. Anderson has alleged only bare conclusions and has not overcome the presumption of trial counsel's competence by identifying specific acts and omissions that, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment.

We acknowledge that what Anderson does argue on appeal is that this court should have no confidence that the Rule 37 issues were handled properly below given this court's findings that the appellate briefs submitted by previous Rule 37 counsel were deficient. We, in effect, rejected this argument when we denied Anderson's motion to reinvest the circuit court with jurisdiction to reconsider the issue of Anderson's mental retardation. We expressly reject the argument now because it is a premature allegation of the ineffectiveness of Anderson's previous Rule 37.5 counsel. What is at issue in the present appeal is the effectiveness of Anderson's trial counsel; the issue of just how effective Anderson's previous Rule 37.5 counsel was at demonstrating trial counsel's ineffectiveness is not presently before us. While we are cognizant of Anderson's argument that a comprehensive state-court review warrants our consideration of this issue now, there has simply been no determination by the fact-finder below on the issue of previous Rule 37.5 counsel's effectiveness at the Rule 37.5 hearing for us to review on this appeal.

Alternatively, Anderson argues that the issue of his mental retardation was "tainted by the participation of Dr. Charles Mallory, who had been subsequently discredited in *Newman v. State,* 2009 Ark. 539, 354 S.W.3d 61." Based on this alleged "taint," as well as the "rather meager" references to the retardation issue at the Rule 37.5 hearing, Anderson contends the particular circumstances of this case warrant a remand for a full factual and legal development of the retardation issue. In support of this alternative argument concerning the "taint" of Dr. Mallory in Anderson's case, Anderson contends that at his trial he presented evidence from Dr. Paul Deyoub that his IQ was 65, that the only evidence challenging or rebutting that finding was from Dr. Charles Mallory, who testified that he found Anderson's IQ to be in the range of 80 to 90 and that Anderson did not put forth his best effort in the testing with Dr. Deyoub. With respect to his resentencing, Anderson points out that Dr. Mallory testified again that Anderson was not mentally retarded, this time during the State's case-in-chief, while the defense presented the testimony of Dr. Elizabeth Speck–Kern, who did not opine as to whether Anderson was mentally retarded, but did state that Anderson's lack of communication with his attorneys was based on emotional issues from child abuse and his "horrendous upbringing" rather than any cognitive or language problems. Subsequent to his resentencing trial and his Rule 37.5 hearing, Anderson asserts that this court discredited Dr. Mallory in *Newman,* and Anderson requests that we take judicial notice of our decision in *Newman* "regarding Dr. Mallory's shortcomings."

This court certainly relies on its previous decisions for their conclusions on points of law, but it does not take judicial notice of the record in other cases. *See,*

*e.g., Leach v. State,* 303 Ark. 309, 796 S.W.2d 837 (1990) (judicial notice may not be taken of the record in a separate case because it cannot be ascertained that the evidence would be the same in both cases). Dr. Mallory's admission in federal habeas proceedings that he erroneously scored the IQ test given to Rickey Dale Newman in *Newman* in order to determine Newman's competency to stand trial was not a conclusion of law of this court, but a specific fact in the *Newman* case. In the present case, there is no such similar factual evidence regarding Dr. Mallory's opinion of Anderson's IQ. In fact, Dr. Mallory did not administer an IQ test to Anderson; rather, he indicated that Dr. Deyoub's finding of an IQ of 65 was suspect because Dr. Deyoub also determined Anderson "had achievement scores consistent with average intelligence (WRAT–III standard scores of 87 in reading, 97 in spelling, and 89 in arithmetic), which would argue against his classification in the category of mental retardation." Whatever may have been true about Dr. Mallory in the *Newman* case, the State is correct that Anderson must confine his claims of error to the record in this case.

The record in this case does show that Dr. Mallory relied on the Kent Test as an indicator that Anderson did not need further IQ testing. And Dr. Mallory's use of the Kent Test was called into question in *Newman.* However, the record in this case also shows that ₈trial counsel did not pursue additional IQ testing of Anderson because of Dr. Deyoub's previous determination that Anderson's IQ fell at the pivotal point of 65, which is the point at which the rebuttable presumption of mental retardation attaches pursuant to section 5–4–618. According to the testimony of trial counsel Latrece Gray, when preparing for the first trial, the defense team used the psychological evaluation of Dr. Andre Derdeyn, and then at the resentencing they used the psychological evaluation of Dr. Speck–Kern. However, Gray testified that neither evaluation provided the defense team with a conclusion that they could use to make a legitimate claim that Anderson was mentally retarded. Gray testified further that no member of the defense team ever requested an additional IQ test after Dr. Mallory's evaluation, because "we had the I.Q. test that we wanted, which was the sixty-five (65) I.Q.," and because "we didn't feel like there was enough to support retesting him on his I.Q. issues." Gray stated further that there was a possibility that another test would have produced a higher number. Thus, Gray's testimony establishes that, because Anderson's IQ fell at the pivotal point of 65, this was a strategic decision not to pursue further the issue of Anderson's IQ and mental retardation. Matters of trial strategy and tactics, even if arguably improvident, fall within the realm of counsel's professional judgment and are not grounds for a finding of ineffective assistance of counsel. *Camargo v. State,* 346 Ark. 118, 55 S.W.3d 255 (2001). Thus, even though another attorney may have chosen a different course, trial strategy, even if it proves unsuccessful, is a matter of professional judgment. *Noel v. State,* 342 Ark. 35, 26 S.W.3d 123 (2000).

₉Finally, we note Anderson's citations to several cases in support of his argument that we should remand for factual and legal development of the mental-retardation issue. We begin with the observation that neither a recall of the mandate nor a writ of error coram nobis is allowed to permit a defendant to pursue a claim of mental retardation. *Coulter v. State,* 365 Ark. 262, 227 S.W.3d 904 (2006). Anderson's mental retardation was actually litigated at trial, determined adversely to Anderson by the jury, and settled on

direct appeal in *Anderson I.* Despite Anderson's current argument to the contrary, we were correct in our conclusion in *Anderson I* that Anderson's reliance on his IQ at age fifteen, while certainly probative of a manifestation of low IQ prior to age 18 as required by section 5–4–618, was not sufficient proof of his IQ or mental retardation at age 19 at the time of the murder, which is also required by section 5–4–618. At resentencing, the jury again imposed the death sentence, finding that Anderson was not mentally retarded. That issue was not raised or addressed in *Anderson II,* although as Anderson points out, all issues objected to were reviewed under Ark. Sup.Ct. R. 4–3(h) (2006).

■ We are not persuaded by Anderson's assertion that a remand is warranted under *Sanders v. State,* 374 Ark. 70, 285 S.W.3d 630 (2008) (per curiam), because he had not alleged a violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We are not persuaded that a remand is warranted under *Robbins v. State,* 353 Ark. 556, 114 S.W.3d 217 (2003), because Anderson has not alleged and has not demonstrated a breakdown in the appellate process. Likewise, we are not persuaded that a remand is warranted under *Lee v. State,* 367 Ark. 84, 238 S.W.3d 52 (2006), because it has not been determined that Anderson has been denied the assistance of |₁₀qualified counsel under Rule 37.5. This court does not recall a mandate so that a petitioner whose initial postconviction proceedings were procedurally sound may file a subsequent petition for relief; rather, the mandate is recalled in extraordinary cases, such as in *Lee,* 367 Ark. 84, 238 S.W.3d 52, so that a petitioner whose first postconviction proceedings were procedurally flawed may file a new petition and receive the procedural safeguards of Rule 37.5.

In summary, conflicting expert evidence of the issue of Anderson's mental retardation and mental health was presented at his trial and resentencing, rejected by the jury both times, and affirmed on direct appeal. Anderson cannot revisit this issue directly, and he has failed to demonstrate that his ineffective-assistance claims as to mitigation, mental retardation, and mental health were wrongly rejected by the circuit court. The subsequent development in the *Newman* case does not warrant a remand for further development of Anderson's mental retardation in the present case. In addition, Anderson has not alleged any grounds for relief pursuant to *Sanders, Lee,* or *Robbins.*

Turning now to the second point for reversal in this appeal, Anderson points out that his petition raised a number of concerns with the admission of his statements to police and the failure to challenge aspects of the statements in relation to his mental retardation. Citing *Flowers v. State,* 362 Ark. 193, 208 S.W.3d 113 (2005), Anderson asserts that mental retardation is a factor to be considered in the totality of the circumstances concerning a statement, and that "[i]f ... the State's evidence that Anderson is not [mentally] retarded is |₁₁flawed by [Dr.] Mallory's skewing of results, [then] that evidence will affect the calculus with regard to the issues involving the statement."

Specifically, Anderson identifies the "issues involving [his] statement" to include the following allegations in his petition: the admission of his statement (claim 1), the failure to call witnesses on the coercion of the statement (claim 8b), the failure to properly examine Lt. Cleve Barfield at the hearing (claim 8c), the failure to claim or present evidence of Anderson's diminished mental capacity (claim 8d) or ability vis-a-vis the statements (claim 8e), the failure to

present evidence of coercion by Anderson's brother Maurice Anderson (claim 8f), the failure to challenge the *Miranda* waiver (claim 8g), and noncompliance with Rule 2.3 of the Ark. R.Crim. P. (claim 8h). With respect to these issues, Anderson acknowledges that the circuit court ruled that either no evidence was presented or that the issues were "mooted" by Anderson's testimony at resentencing that he was guilty and that his confession was voluntary.

■ We begin our analysis with the observation that this second point on appeal is based upon a premise that we previously rejected in the first point on this appeal—that being that Dr. Mallory's participation in this case "tainted" the evidence of the issue of Anderson's mental retardation. Secondly, we note, as does Anderson, that the issue of a defendant's intelligence is but one of many circumstances to be considered when determining the validity of a waiver of rights surrounding a statement. *See Flowers,* 362 Ark. 193, 208 S.W.3d 113. Finally, we note the circuit court's reliance on Anderson's testimony at his resentencing wherein he admitted both his guilt and the voluntariness of his statements. Given this testimony, Anderson has failed to demonstrate prejudice under the *Strickland* analysis. To establish prejudice, Anderson must show that there is a reasonable probability that the jury's decision would have been different absent counsel's alleged errors. *Cantrell,* 2011 Ark. 449, 2011 WL 5112842. If a claim fails when evaluated under the prejudice prong of *Strickland,* it is unnecessary to first evaluate whether counsel's performance was deficient in some respect. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (stating that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). Given Anderson's testimony at resentencing that he was guilty and that his confession was voluntary, and given the circuit court's reliance on such testimony, we cannot say the circuit court erred in its rulings. Anderson has failed to demonstrate prejudice.

■ As his third point for reversal, Anderson contends he received ineffective assistance of counsel because his trial counsel was impaired. The issue here involves claim 8w of the amended petition, alleging impairment due to personal issues of lead defense counsel Llewellyn Marczuk. In a domestic-relations proceeding, Marczuk admitted to using crystal methamphetamine, and that admission was entered as an exhibit in the Rule 37.5 hearing. However, Marczuk asserted that his usage was several years after Anderson's trials. Co-counsel Latrece Gray testified at the Rule 37.5 hearing that she noticed a change in Marczuk's behavior between the first and second trials and that "basically, we just thought he was nuts, but that was it. We just thought he was going off the deep end." Gray also stated, "I can't tell you they would lead me to believe he wasn't competent to be lead counsel. I just thought he was just goofy."

The circuit court ruled that there were no facts to show any impairment to Marczuk's judgment at any of the trials, and the court specifically found that no impairment of judgment on Marczuk's part were proven. On appeal, Anderson asserts that the circuit court's ruling is clearly erroneous given Gray's testimony. Anderson acknowledges that he does not have specific evidence that establishes Marczuk's drug use during his trials. However, Anderson does contend that Gray's testimony provides a sufficient basis to conclude that Marczuk suffered mental impairment of some kind, be it drug use or otherwise, in the second trial.

 Marczuk testified at the Rule 37.5 hearing and denied using drugs while representing Anderson. Marczuk also stated that, although he was involved in a heated custody dispute, no personal issues affected his representation of Anderson. Marczuk's supervisor testified that she had no reason to believe that he was on drugs. Given the testimony presented on this issue at the hearing, it is obvious this was a credibility call by the circuit court. The circuit court was entitled to resolve the credibility issue in favor of counsel's competence, and this court defers to such credibility determinations. *See, e.g., Johnson v. State,* 356 Ark. 534, 157 S.W.3d 151 (2004). Accordingly, we cannot say that Gray's testimony was sufficient to demonstrate error in the circuit court's ruling that no impairment had been proven.

Anderson, through current counsel, acknowledges that previous counsel raised a number of additional points in his amended petition, and that the circuit court denied each of those points in its order. However, on appeal, current counsel specifically identifies each of these additional allegations and contends that they are not cognizable in this Rule 37.5 appeal because they have either already been decided on direct appeal, are moot, are matters ⌊₁₄that have been settled by precedent from this court or the United States Supreme Court, or are matters upon which no argument can be made given the status of the record. The State does not provide an adversarial response, contending without citation to authority that none is needed since Anderson does not seek relief under these allegations. As Anderson does not pursue these additional points on appeal, we need not address them.

In conclusion, Anderson has not demonstrated any grounds for reversal of the denial of his Rule 37.5 petition, and the decision to deny postconviction relief is affirmed.