

Cite as 2016 Ark. App. 102

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–14–364

| | |
|---|---|
| DELBERT RAYMOND PRICE<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | **Opinion Delivered** FEBRUARY 17, 2016<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. CR2013-1576-1]<br><br>HONORABLE WILLIAM A. STOREY, JUDGE<br><br>AFFIRMED |

**DAVID M. GLOVER, Judge**

In January 2014, appellant Delbert Price was convicted in a bench trial before the Washington County Circuit Court of theft of leased, rented, or entrusted property and sentenced to thirty years in the Arkansas Department of Correction, with twenty-four years' suspended.[1] On appeal, he argues the State failed to prove that he had the requisite intent to sustain the conviction. We affirm.

At trial, Janet Zimmer, the manager of Sixt Rent-A-Car in Daytona, Florida, testified that on February 26, 2013, Price rented a 2013 Mercedes C class sedan. Zimmer testified the

---

[1] This is the third time this case has been before our court. In the two previous appeals, attorney Camille Edmison-Wilhelmi filed no-merit briefs pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Rule 4–3(k) of the Rules of the Arkansas Supreme Court and Court of Appeals and moved to withdraw as counsel. Both times, we denied the motions to withdraw and ordered rebriefing due to deficiencies. *Price v. State*, 2015 Ark. App. 437; *Price v. State*, 2015 Ark. App. 173. Attorney Edmison-Wilhelmi filed a motion to substitute counsel; this motion was granted, and David Hawkey was appointed to represent Price. Hawkey then filed the current appeal.

vehicle was almost brand new; it had been purchased for $32,876; Price had rented the vehicle until March 4; he provided an American Express card at the time of the rental; the vehicle could not be driven out of state because at the time, Sixt operated only in Florida; Price provided them rental information and indicated the information he had given was true when he signed the contract; and Price did not return the vehicle on the day it was due and did not call to say it would be returned late. Zimmer further explained that, when Price did not return the vehicle to Sixt, the rental company attempted to contact Price through email and phone calls. She said a certified letter was also mailed to Price in Springdale, Arkansas, at the address he provided to the rental company—1930 Dick Smith Street—and was returned as undeliverable; when the certified letter was returned on March 27, the company reported the vehicle as stolen to the Orlando Police Department. Zimmer explained that Sixt was able to charge Price's credit card for the initial rental deposit, but his card was declined on March 19. She said she did not hear anything further about the vehicle until August 23, 2013, when she was informed the vehicle had been located in Arkansas. She had the vehicle transported to Atlanta at a cost of $380. She presented copies of the towing and storage bill from Springdale, Arkansas, as well as an invoice for the damage to the vehicle that had to be repaired. Zimmer stated the vehicle had 3300 miles on it when it was rented to Price, and 15,211 miles on it when it was returned.

On cross-examination, Zimmer admitted that while the rental contract stated the vehicle could not be driven out of Florida, the contract also provided that if the vehicle was driven out of Florida, there would be a $.50 per-mile penalty. According to Zimmer, Sixt did

not call a repossession company or file a civil suit after Price failed to return the Mercedes; the vehicle was just reported as stolen. She also acknowledged Price had provided a second Springdale address on Burford Street that Sixt listed as a company address, but Sixt had not sent a certified letter to that address.

Springdale police officer Cody Ross testified that his department received a tip on August 22, 2013, that a stolen vehicle might be located at a Buford Street address, which Ross knew to be Price's address. When he arrived at the address, Ross said he noticed a white Mercedes backed into the garage. The vehicle matched the description of the car he had been given information about, although he was unable to see the license plate. Ross attempted to make contact at the residence, but no one answered the door. Ross watched the house and followed Price when he saw Price leave in the vehicle. When Ross confirmed the license plate matched the stolen-vehicle information, he activated his blue lights; Price began to quickly accelerate but eventually stopped. Ross arrested Price, and after his arrest, Price told Ross the car was not stolen and he never intended to steal it. Ross noticed the vehicle had been damaged, including a puncture in the bumper, an indentation in the right rear corner, and damage to the front left rim.

Detective Michael Hendrix, also of the Springdale Police Department, testified he processed the vehicle and found a check stub with Price's name and Social Security number on it. He said Price kept telling him he did not steal the car. Detective Hendrix agreed that, other than the damage to the vehicle, nothing had been done to alter the vehicle.

After the State's case, Price's counsel moved to dismiss the charges against Price,[2] arguing that the evidence was insufficient to show that Price did anything in a fraudulent manner—he had provided the address where the vehicle was located to the rental company, there was no evidence that he had hidden or altered the vehicle, and there was no criminal intent, it was merely a civil matter. The circuit court denied this motion.

The defense called several witnesses who testified as to Price's good character; however, the State countered with evidence of prior convictions for robbery, theft, forgery, and felony theft of leased, rented, or entrusted personal property. One of Price's co-workers testified Price had never hidden the Mercedes, and Price had told him that it was a rental car. Price's mother-in-law, Catherine Brown, testified one of Price's business investors pulled out after Price traveled to Florida, and she had to send him money while he was there because he had run out of money. Brown said her daughter became ill when Price was in Florida, and it had been a struggle since Price had returned from Florida.

Price testified he currently lived in Fayetteville but had lived on Buford Street in Springdale prior to that. He explained he gave Sixt's rental agent the Buford Street address, but his driver's license still listed the Dick Smith Street address. He denied he provided the Dick Smith Street address as his address and said he in fact told the rental agent that was not his current address. Price explained his business was showcasing different college football players for talent scouts; but one of his Florida investors had backed out, leaving him in a

---

[2]As this was a bench trial, Price was not required to make a motion at this time—he only had to move to dismiss the charges at the close of all the evidence. Ark. R. Crim. P. 33.1(b) (2015).

financial bind; thus, he spent all of his money he did not have enough money to fly home, and he drove the Mercedes home. Price explained it was his intention to go home, assess the situation, and return the vehicle to Florida in a week or two, but he was never able to save enough money to return the vehicle and pay the rental fees. Price testified he never hid the vehicle after he returned to Arkansas; he called Sixt after he returned to Arkansas and informed them he was not able to return the vehicle; Sixt told him they would be in touch; and he was waiting for Sixt to contact him. Price stated that while he showed Sixt his driver's license with the Dick Smith Street address on it, he put his correct address on the paperwork. He denied receiving any certified mail from Sixt. At the close of his testimony, Price renewed his motion for dismissal; the circuit court again denied the motion and found Price guilty of theft of leased personal property. Price now challenges the sufficiency of the evidence to sustain the conviction.

A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is a challenge to the sufficiency of the evidence; the test is whether substantial evidence, whether direct or circumstantial, supports the verdict. *Gill v. State*, 2015 Ark. 421, 474 S.W.3d 77. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture; while circumstantial evidence may constitute substantial evidence to support a conviction, it must exclude every other reasonable hypothesis than that of the guilt of the defendant. *Id*. On appeal, the appellate courts view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id*. Criminal intent or purpose can

seldom be proved by direct evidence and must usually be inferred from the circumstances. *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821. The finder of fact is not required to lay aside its common sense in determining criminal intent. *Id.*

Arkansas Code Annotated section 5–36–115(a)(1) (Repl. 2013)[3] provides that a person is guilty of theft of leased, rented, or entrusted personal property if he "[i]ntentionally, fraudulently, or by false pretenses takes, carries, leads, drives away, destroys, sells, secretes, converts, or appropriates in any wrongful manner any personal property of another person that is leased, rented, or entrusted to the actor." It is prima facie evidence of intent to commit this crime if the person who leased or rented the property

> (1) Fails to return or make an arrangement acceptable with the lessor to return the personal property to its owner within five (5) days, excluding Saturday, Sunday, or a state or federal holiday, after proper notice following the expiration of the lease or rental agreement; or
>
> (2) Presents identification to the lessor or renter of the personal property that is false, fictitious, or not current with respect to name, address, place of employment, or other appropriate item.

Ark. Code Ann. § 5–36–115(c). "Proper notice" from the lessor "shall consist of a written demand addressed and mailed by certified or registered mail to the lessee at the address given at the time of making the lease or rental agreement." Ark. Code Ann. § 5–36–115(d).

On appeal, Price argues he made no intentional misrepresentation to the rental company and fully intended to return the vehicle. He states that, at the time he signed the rental contract, he gave both a post office box and a street address. While he admits his

---

[3]This statute was amended in 2015; the amendments made minor stylistic changes.

driver's license had not been updated to reflect his current address, he asserts he did not print, type, or provide that address to the rental company except when he handed his driver's license to the clerk at the time of the rental. Price argues he never hid the vehicle, altered it in any way, or attempted to hold the vehicle out as his personal property. He further asserts this was only a civil matter, not a criminal matter, as it was an attempt to collect a debt, and there was no deception on his part.

In support of his argument, Price cites *Cox-Hilstrom v. State*, 58 Ark. App. 109, 948 S.W.2d 409 (1997); *Wiley v. State*, 268 Ark. 552, 594 S.W.2d 57 (Ark. App. 1980); and *Cates v. State*, 267 Ark. 726, 589 S.W.2d 598 (Ark. App. 1979). Both *Cates* and *Wiley* are inapplicable to the instant case because they each deal with the offense of theft by deception, not the offense of theft of leased, rented, or entrusted personal property. And while *Cox-Hilstrom* involved both issues of theft by deception and theft of leased property, the issue involving the theft of leased property in that case only involved the giving of a jury instruction as to the offense, not the sufficiency of the evidence.

Here, the vehicle was due back to Sixt on March 4, 2013, but Price failed to return it; instead, he drove the vehicle to Arkansas, and the Springdale police officers discovered the vehicle in Springdale, Arkansas, on August 22, 2013, at Price's residence. There was testimony Sixt had attempted to contact Price through telephone calls, emails, and a certified letter, to no avail. Price provided Sixt a driver's license that did not reflect his current address. In accordance with the statute, this is prima facie evidence of intent to commit the crime of theft of leased property. While Price claimed he was waiting to hear from Sixt about returning the

car and had always intended to return it, the trial court was not required to believe this testimony.

Affirmed.

ABRAMSON and HARRISON, JJ., agree.

*David Hawkey*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Evelyn D. Gomez*, Ass't Att'y Gen., for appellee.