

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR–16–379

| | | |
|---|---|---|
| RANDY DUCK | | **Opinion Delivered:** December 7, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CR-15-71] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant appeals from his conviction by jury of rape. His sole point on appeal is that there was insufficient evidence to support his conviction. We affirm.

On February 24, 2015, appellee filed an information charging appellant with one count of rape, a Class Y felony, pursuant to Arkansas Code Annotated section 5-14-103. A jury trial in the matter was held on September 28 and 29, 2015. After the State rested, appellant moved for a directed verdict, which the circuit court denied. Appellant called no witnesses and raised his directed-verdict motion again, which was denied. The jury then found appellant guilty as charged and sentenced him to fifteen years' imprisonment in the Arkansas Department of Correction. A sentencing order was entered on November 9, 2015, reflecting the verdict and sentence. A second amended sentencing order was entered

on December 14, 2015, showing that appellant had been adjudicated guilty of an offense requiring sexual-offender registration. This timely appeal followed.[1]

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence.[2] In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial.[3] Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture.[4] This court views the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered.[5] The credibility of witnesses is an issue for the jury and not the court.[6] The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[7]

Appellant's sole argument on appeal is that the circuit court erred in denying his motion for directed verdict because there was insufficient evidence to support his rape

---

[1] Appellant filed his notice of appeal on October 28, 2015, which was prior to the November 9, 2015 date on which the circuit court entered its original sentencing order. Arkansas Rule of Appellate Procedure–Criminal 2(b)(1) states that "[a] notice of appeal filed after the trial court announces a decision but before the entry of the judgment or order shall be treated as filed on the day after the judgment or order is entered."

[2] *Williams v. State*, 2011 Ark. App. 675, at 5, 386 S.W.3d 609, 613 (citing *Sparacio v. State*, 2009 Ark. App. 350).

[3] *Id.* at 5–6, 386 S.W.3d at 613.

[4] *Id.* at 6, 386 S.W.3d at 613.

[5] *Id.*

[6] *Id.* (citing *Morgan v. State*, 2009 Ark. 257, 308 S.W.3d 147).

[7] *Id.*

conviction. Appellant was convicted of rape pursuant to Arkansas Code Annotated section 5-4-103(a)(2)(B), which states that a person commits the crime of rape if he engages in sexual intercourse or deviate sexual activity with another person who is incapable of consent because she is mentally defective.[8] "Sexual intercourse" is defined as penetration, however slight, of the labia majora by a penis.[9] "Deviate sexual activity" is defined as any sexual gratification involving the "penetration, however slight, of the anus or mouth of a person by the penis of another person" or the "penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person[.]"[10] "Mentally defective" is defined as suffering from a mental disease or defect that renders the person incapable of understanding the nature and consequences of a sexual act or unaware a sexual act is occurring.[11]

The pertinent evidence at trial was as follows. Appellant's wife, and the victim's mother, testified that B.P., the victim, was diagnosed with "Cerebral Palsy with some global brain damage" and had a "mental age of around 6." On the night of January 19, 2015, she went to bed after she put B.P. to bed, but went to the den when she woke up and found appellant was not in the bed with her. After not finding him in the den, she found him in B.P.'s room. At first, "everything was fine" as appellant was clothed and "just propped up beside" B.P. because she was "scared." When she came back in,

---

[8] (2015).

[9] Ark. Code Ann. § 5-14-101(11) (2015).

[10] Ark. Code Ann. § 5-14-101(1)(A) & (B).

[11] Ark. Code Ann. § 5-14-101(4)(A)(i) & (ii).

appellant was "beneath the covers on the other side of [B.P.]." B.P.'s panties and pajama bottoms were on the floor. When she asked B.P. why her clothes were off, B.P. said "you need to ask D that mamma and Randy said shut up [B.P.]"[12] She told B.P. to put her clothes back on, and appellant left the room; she did not notice what he was wearing when he left. However, when he went to take his second bath that evening, she noticed he was wearing boxers only and had a "partial erection." She went to check on B.P. who was "fine and not scared" and who told her that appellant was "loving on [her]." She later went back into the bathroom where she saw his boxers, noticed a "brownish stain at the front area on the inside of the underwear where his penis would be located[,]" and bagged them up. She didn't know what to do because "[B.P.] was fine" and "[she] was confused."

Appellant's wife testified that appellant told her that night that "[she was] going to have to do something about that little girl (referring to B.P.), this is going to cause us some problems" and the next day he said "this was going to cause us problems[.]" On the evening of January 20, 2015, she noticed "the same colored stains on [B.P.'s] panties as [appellant's] underwear"; she bagged the panties up in a separate bag.  On January 21, 2015, she called her pastor and told him what had happened. The pastor made a three-way call to the Union County Sheriff's Office. Though appellant's wife was supposed to go somewhere with appellant, she went to the police station. Detective Jim Sanders came out to her home and retrieved both bagged items as well as B.P.'s bedsheet.

---

[12] B.P. refers to appellant as "D."

SLIP OPINION

Detective Jim Sanders, of the Union County Sheriff's Office, confirmed in his testimony that he went to appellant's home with appellant's wife and took the separately bagged items—male underwear and female panties—as well as B.P.'s bed sheet. He also testified to taking oral swabs from appellant and B.P. Phillip Rains, of the Arkansas State Crime Lab, testified that although he did not find any semen or pubic hairs on any of the tested items and did not know the source of any of the stains found on the items submitted to the crime lab, he could confirm that the stains in appellant's underwear and in B.P.'s panties were both blood.[13] Kellie Dixon, forensic examiner with the Arkansas State Crime Lab, testified that the blood stains in both appellant's underwear and B.P.'s panties contained a mixture of blood from appellant and B.P. Michael Scott Chandler, doctor for B.P., testified that B.P. had a "medical history of some retardation, cerebral palsy, a history of limited seizure activity." He helped obtain a guardianship for B.P., and his opinion was that she was "not capable of making her own medical decisions."

Finally, B.P. testified to the following:

There was a time when I was naked with D. When I was naked with D my whole thing was off. When I was naked momma told me to put my clothes back on. I put my clothes back on. I was naked in bed. D was in my bed. He was under the covers. When he was under the covers he laid on me. Nothing else happened. On the girl doll you are holding he touched me there. I don't know what it's called. On the boy doll you are holding that part touched me where I pointed on the girl doll. It felt bad. I was in bed when he touched me there. He did not say anything

---

[13] Rains testified that the crime lab typically does not "examine the male underwear [for semen] because it would not be unusual to find semen on a male's of reproductive age."

to me. He didn't tell me to tell my mom. I love D. Mom did not tell me to tell lies about D. I am being honest.[14]

She also testified "I said [appellant] touched me. He touched me with his hand. We hugged each other. D kisses me occasionally." Carla Thomas, a sexual–assault examiner at Children's Advocacy Center in Pine Bluff, testified that though B.P. did not disclose any kind of sexual assault, she "found a notch at six o'clock in [B.P.'s] hymen" which was "indicative of sexual assault." She described the notch as a "healed trauma." She stated that the notch on B.P.'s hymen was "abnormal" and that that finding was consistent with abuse. Though she could not identify what caused the injury, "[s]omething had to pass through the labia and all the way to get into the vagina"; the injury is "consistent with sexual intercourse[.]"

Circumstantial evidence may constitute substantial evidence.[15] To be substantial, circumstantial evidence must exclude every reasonable hypothesis other than the accused's guilt.[16] However, the question of whether the circumstantial evidence excludes every reasonable hypothesis consistent with innocence is for the jury to decide.[17] On review, the appellate court determines whether the jury had to resort to speculation and conjecture to

---

[14] The record shows that B.P. pointed to areas on the dolls to indicate what part of appellant's body touched her body and where her body was touched; however, no one ever identified what areas she was pointing to for the record.

[15] *Sharp v. State*, 2015 Ark. App. 718, at 3, 479 S.W.3d 568, 571 (citing *Smith v. State*, 2010 Ark. App. 135, 374 S.W.3d 124).

[16] *Id.*

[17] *Id.*

reach its verdict.[18] Criminal intent or purpose can seldom be proved by direct evidence and must usually be inferred from the circumstances.[19] The finder of fact is not required to lay aside its common sense in determining criminal intent.[20]

It is the role of the jury to determine the facts of the case. Variances and discrepancies in the proof go to the weight or credibility of the evidence and are matters for the fact-finder to resolve.[21] The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence.[22] Accordingly, when there is evidence of a defendant's guilt, even if it is conflicting, it is for the jury as fact-finder to resolve any conflicts and inconsistencies; it is not for the court to resolve on a directed-verdict motion.[23]

Looking at the evidence submitted at trial supporting the verdict and taking that evidence in the light most favorable to the State as we must do, there was sufficient evidence to support the jury's finding that penetration occurred and to support the verdict. We affirm.

Affirmed.

---

[18] *Id.* (citing *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 906).

[19] *Price v. State*, 2016 Ark. App. 102, at 5–6, 483 S.W.3d 312, 315 (citing *Davis v. State*, 2015 Ark. App. 234, 459 S.W.3d 821).

[20] *Id.*

[21] *Thomas v. State*, 2016 Ark. App. 195, at 4, 487 S.W.3d 415, 418 (citing *Starling v. State*, 2016 Ark. 20, at 5, 480 S.W.3d 158; *Marts v. State*, 332 Ark. 628, 644, 968 S.W.2d 41, 49 (1998)).

[22] *Id.* (citing *Burley v. State*, 348 Ark. 422, 430, 73 S.W.3d 600, 605 (2002)).

[23] *Id.* (citing *Marts*, 332 Ark. at 644, 968 S.W.2d at 49).



GLOVER and WHITEAKER, JJ., agree.

*Craig Lambert* and *Gary McDonald*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen Green*, Ass't Att'y Gen., for appellee.