Cite as 2020 Ark. App. 161

# ARKANSAS COURT OF APPEALS

## DIVISION II

**No.** CR-19-110

| | |
|---|---|
| RANDY W. DUCK | **Opinion Delivered:** March 4, 2020 |
| APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70CR-15-71] |
| V. | |
| | HONORABLE HAMILTON H. SINGLETON, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Randy Duck appeals the order of the Union County Circuit Court denying his petition for postconviction relief pursuant to Rule 37.1 of the Arkansas Rules of Criminal Procedure (2019).[1] Appellant, appearing pro se, raises eight points on appeal; however, none require reversal. We affirm.

Appellant was convicted by a Union County Circuit Court jury of the rape of B.P., his stepdaughter, in violation of Arkansas Code Annotated section 5-14-103(a)(2)(B) (Supp. 2019), which provides that a person commits the crime of rape if he or she engages in sexual

---

[1]We dismissed appellant's previous pro se appeal of the circuit court's denial of his request for postconviction relief because the record reflected that he was still represented by counsel. *See Duck v. State*, 2019 Ark. App. 556. On January 29, 2020, this court granted counsel's motion to be relieved and reinstated appellant's pro se appeal that is the subject of this opinion.

intercourse or deviate sexual activity with another person who is incapable of consent because he or she is mentally defective. At the time of the rape, B.P. was seventeen years old but had the mental age of a four-to seven-year-old. Following a jury trial, appellant was found guilty and sentenced to fifteen years' imprisonment in the Arkansas Department of Correction. We affirmed his conviction on direct appeal.[2]

Appellant then filed in the circuit court a pro se petition for postconviction relief. The circuit court denied the petition without holding an evidentiary hearing. Appellant now brings this appeal.

On appeal from a circuit court's ruling on a petitioner's request for Rule 37 relief, this court will not reverse the circuit court's decision granting or denying postconviction relief unless it is clearly erroneous.[3] A finding is clearly erroneous when, although there is evidence to support it, the appellate court after reviewing the entire evidence is left with the definite and firm conviction that a mistake has been committed.[4]

The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[5] Pursuant to *Strickland*, we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim

---

[2]*See Duck v. State*, 2016 Ark. App. 596, 509 S.W.3d 5.

[3]*Kemp v. State*, 347 Ark. 52, 60 S.W.3d 404 (2001).

[4]*Id.*

[5]*Strickland v. Washington*, 466 U.S. 668 (1984).

of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution.[6] A petitioner making an ineffective-assistance-of-counsel claim must show that counsel's performance fell below an objective standard of reasonableness.[7] A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[8]

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he or she was deprived of a fair trial.[9] The petitioner must show there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors.[10] A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial.[11] Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders

---

[6] *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007).

[7] *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam).

[8] *Id.*

[9] *Id.*

[10] *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006).

[11] *Id.*

the result unreliable.[12]   Additionally, conclusory statements that counsel was ineffective cannot be the basis of postconviction relief.[13]

For his first point on appeal, appellant argues that the circuit court erred in finding that his counsel was not ineffective for failing to challenge the sufficiency of the proof that B.P. was "mentally defective" as required under Arkansas Code Annotated section 5-14-103(a)(2)(B).[14]  "Mentally defective" is defined as suffering from a mental disease or defect that renders the person incapable of understanding the nature and consequences of a sexual act or unaware a sexual act is occurring.[15]   Appellant contends that no testimony was presented to establish that B.P. was either incapable of understanding the nature and consequences of a sexual act or unaware that a sexual act was occurring.  He argues that due to the State's failure to "present evidence sufficient to satisfy requirements of" Arkansas Code Annotated section 5-14-103(a)(2)(B), counsel should have moved for a directed verdict, and the failure to do so was "professionally unreasonable" and amounted to ineffective assistance.

As an initial matter, we note that on direct appeal, appellant challenged the sufficiency of the evidence to support his rape conviction.[16]  In affirming, this court found

---

[12]*Id.*

[13]*Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783.

[14](Supp. 2019).

[15]Ark. Code Ann. § 5-14-101(4)(A)(i) & (ii).

[16]*See Duck*, 2016 Ark. App. 596, 509 S.W.3d 5.

that there was sufficient evidence to support each element of the offense pursuant to Arkansas Code Annotated section 5-14-103(a)(2)(B).[17] To the extent that appellant raises this "mental defect" argument as a challenge to the sufficiency of the evidence, we decline to address it as such.[18]

Furthermore, appellant's argument that trial counsel was ineffective for failing to move for a directed verdict is without merit. When a petitioner asserts that counsel is ineffective for the failure to make a motion or an argument, the petitioner must show that the motion or argument would have been meritorious because the failure to make an argument that is meritless is not ineffective assistance of counsel.[19]

Here, despite appellant's contention to the contrary, there was substantial testimony relating to B.P.'s mental deficits. Dr. Michael Scott Chanler, B.P.'s doctor, testified that B.P. has a "medical history of some retardation, cerebral palsy, a history of limited seizure activity later in life." He opined that B.P.'s mental age ranged from four to seven years old. Dr. Chanler also testified that, in his opinion, B.P. was incapable of making her own medical and financial decisions or holding a job. Additionally, at trial, Renae Duck, B.P.'s mother, testified that her daughter had been diagnosed with cerebral palsy with some global brain damage. She stated that she obtained a guardianship over B.P. and that B.P. has the mental age of approximately six years old.

---

[17] *See Duck*, 2016 Ark. App. 596, 509 S.W.3d 5.

[18] *See Scott v. State*, 2012 Ark. 199, 406 S.W.3d 1 (a direct challenge to the sufficiency of the evidence is not cognizable in Rule 37.1 proceedings).

[19] *Chunestudy v. State*, 2014 Ark. 345, 438 S.W.3d 923.

5

We hold that counsel's failure to move for directed verdict challenging the proof of mental defect resulted in no prejudice to appellant; considering the testimony of B.P.'s doctor and mother, the motion would have been denied. Counsel cannot be ineffective for failing to make a meritless motion.

Appellant next argues that the circuit court erred in denying his request for postconviction relief based on his claim that counsel was ineffective for failing to move to strike two jurors. He argues that two particular jurors have close ties with the prosecuting attorney's office—one with familial ties and the other through employment relations—and consequently were not qualified to serve as jurors. This court has previously held that a claim of ineffective assistance for failure to object to the seating of a juror is a challenge to the qualifications of the particular juror to serve, and such a claim is a direct attack on the verdict and not a cognizable claim in a petition for Rule 37.1 relief.[20]

For his next point on appeal, appellant argues that the circuit court erred by denying relief on his claim that counsel was ineffective for failing to challenge the chain of custody of certain evidence. Renae testified that on the night of January 19, 2015, she woke up and found her husband, appellant, not in bed with her; she found him in B.P.'s room, clothed and "propped up" beside B.P. Renae later returned to B.P.'s room; appellant was then "beneath the covers on the other side" of B.P., and B.P.'s panties and pajama bottoms were on the floor. When she questioned B.P. about why her clothes were on the floor, B.P. said,

---

[20] *See Anderson v. State*, 2009 Ark. 493.

"[Y]ou need to ask D that mamma and [appellant] said shut up [B.P.]"[21]  B.P. later told Renae that appellant was "loving on [her]."

Renae testified that she thereafter saw appellant's boxers in the bathroom and noticed a "brownish stain at the front area on the inside of the underwear where his penis would be located."  She then placed the boxers in a bag.  Renae also separately bagged B.P.'s panties when she discovered "the same colored stains on [B.P.'s] panties as [on appellant's] underwear."  Renae testified that she then placed the separately bagged items in a closet.  Detective Jim Sanders of the Union County Sheriff's Office testified that following Renae's report of the incident, he went to appellant's home and retrieved the separately bagged items that were located in the closet, just as Renae had indicated.

On appeal, appellant asserts that there were contradictions in the witnesses' testimony regarding the storage of the items.  In support of his argument, he directs the court's attention to Renae's testimony wherein she testified to placing the items in paper bags; however, Detective Sanders testified that he found them in plastic bags.  Relying on *Crisco v. State*,[22] appellant contends that counsel's failure to object to the admission of the bloody underwear and panties on chain-of-custody grounds amounted to ineffective assistance.  Appellant contends that *Crisco* was reversed and remanded for "visual discrepancies" similar to those in the case at hand.  We disagree.  The holding in *Crisco* was much narrower than appellant's argument indicates.

---

[21]B.P. referred to appellant as "D."

[22]328 Ark. 388, 943 S.W.2d 582 (1997).

Keith Crisco was convicted of delivery of methamphetamine.[23] On appeal, he argued that there were discrepancies related to the evidence: an officer testified that the substance was an off-white powder, while the forensic chemist described the drug as a tan, rock-like substance.[24] Crisco argued that because of the discrepancies, there was a possibility that a break in the chain of custody occurred and that the circuit court abused its discretion in allowing into evidence an exhibit that was not properly authenticated.[25] The *Crisco* court reversed and remanded for the "marked difference[s]" in the descriptions of the substance and the "readily interchangeable" nature of the substance.[26] That is not the circumstance before this court. Here, the difference in description was minor—paper or plastic—not marked differences as in *Crisco*, and the one minor difference was related to the storage of the items and not the items of evidence themselves. Additionally, appellant's underwear and B.P.'s panties, both with bloodstains, are not readily interchangeable items. Minor uncertainties in the proof of chain of custody are matters to be argued by counsel and weighed by the jury, but they do not render the evidence inadmissible as a matter of law.[27] Therefore, despite appellant's urging to the contrary, we find no reversible error on this point.

---

[23]*Id.*

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*McLaughlin v. State*, 2015 Ark. 335, 469 S.W.3d 360.

For his next point on appeal, appellant argues that counsel was ineffective for failing to call certain witnesses during the guilt phase of his trial. He claims that he was prejudiced by counsel's refusal to call witnesses to testify regarding his "good character and reputation for truthfulness" as well as to advance a theory that he was "set-up" and that Renae "orchestrat[ed] a false rape allegation in order to gain leverage in their divorce proceedings." The decision of whether to call a witness is generally a matter of trial strategy that is outside the purview of Rule 37.1.[28]

When assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not in and of itself proof of counsel's ineffectiveness.[29] When a defendant produces a character witness, he or she may open the door to evidence that might be inadmissible otherwise.[30] Once the door has been opened, the State may question the witness regarding his or her knowledge of specific instances of conduct, and there is no limit, other than relevancy, on the kind of instances of misconduct with respect to which cross-examination may occur.[31]

---

[28]*Nelson v. State*, 334 Ark. 407, 39 S.W.3d 791 (2001) (per curiam).

[29]*Id.*

[30]*Johnson v. State*, 2010 Ark. App. 606, 378 S.W.3d 152.

[31]*Id.*

Here, despite appellant's contention that certain witnesses had "intimate knowledge" of his good character, the record demonstrates that putting on character witnesses would have opened the door to damaging testimony. The following statement in appellant's brief supports this finding: "The Court itself confirmed the fact that Renae Duck was a witness with obvious motive against Duck, being the alleged shooting of a firearm at her and other abusive conduct toward Renae Duck . . . ." As such, we hold that appellant has failed to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[32]

Appellant also argues that the circuit court erred in denying relief on his allegation that counsel provided ineffective assistance by failing to call the aforementioned witnesses to testify during the sentencing phase of his trial. Again, the decision not to call a particular witness is generally a matter of trial strategy and therefore is not cognizable in a Rule 37.1 proceeding.[33] Moreover, although appellant argues that he was prejudiced by counsel's failure to call certain witnesses, we are unpersuaded. Appellant was charged with a Class Y felony, which subjected him to a sentence range of ten to forty years, or life; however, appellant was sentenced to serve fifteen years' incarceration. We find no reversible error in the circuit court's denial of relief on this point.

Appellant next argues that counsel provided ineffective assistance based on the failure to present evidence of "doctor shopping" by Renae and that the circuit court clearly erred

---

[32] *See Taylor v. State*, 2015 Ark. 339, 470 S.W.3d 271.

[33] *Nelson, supra.*

in finding to the contrary. Specifically, appellant alleges that Renae took B.P. to be examined by three medical professionals; two, a doctor and a nurse, both unnamed, concluded that B.P. displayed no physical evidence of sexual abuse or penetration. Appellant contends that had counsel properly cross-examined Renae and elicited this testimony, there is a "reasonable probability that the jury would have concluded that no sexual activity took place at all between Duck and the alleged victim."[34]

The circuit court found that counsel's decision not to cross-examine Renae on the alleged doctor shopping was a matter of trial strategy. We agree. Where a decision by counsel was a matter of trial strategy, and that decision is supported by reasonable professional judgment, counsel's decision does not provide a basis for Rule 37.1 relief.[35] Moreover, Carla Thomas, a sexual-assault nurse examiner at Children's Advocacy Center, testified that B.P.'s hymen had an abnormal notch that was indicative of abuse. Thomas further testified that the injury is consistent with sexual intercourse; "[s]omething had to pass through the labia and all the way to get into the vagina." In his argument, appellant does not provide any timeline as to when the examinations by the unidentified doctor and nurse occurred. We are left to speculate as to whether Thomas's examination was first, last, or in between and what, if any, significance that has. Appellant additionally fails to identify

---

[34]The State mischaracterizes appellant's argument on this point, addressing it as a failure to call witnesses (doctor and nurse) to testify; however, appellant's argument is presented as a failure to properly cross-examine Renae about the alleged examinations performed by the unnamed doctor and nurse.

[35] *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63 (citing *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam)).

the doctor and nurse and does not provide any details as to their alleged findings. Therefore, due to the lack of facts supporting his argument, we cannot say that counsel's decision was not based on reasonable professional judgment. Conclusory statements without supporting facts do not support the granting of postconviction relief.[36]

Appellant also argues that the circuit court erred in finding that his counsel was not ineffective for failing to poll the jury after the trial was concluded. He contends that following trial, his counsel informed him that two of the jurors expressed that they felt pressured by the jury foreperson and that the verdict was a "compromise verdict."

When the jury delivered its verdict finding appellant guilty of rape, the circuit court asked, "Ladies and gentlemen of the jury, is this your verdict, each of you so say all of you?" The record reflects that the jurors responded, "Yes." Given that affirmative response from the jurors, appellant's counsel declined to poll the jury.

Although appellant asserts that he was prejudiced by counsel's failure to poll the jury, he only speculates as to what may have occurred had the jury been polled. He fails to provide facts establishing prejudice. Appellant does not contend that any of the individual jurors, during the collective response affirming the guilty verdict, showed outward signs of equivocation as to their vote. Bare assertions of ineffectiveness are not enough, and conclusory statements that counsel was ineffective will not sustain a Rule 37 petition.[37] We

---

[36]*Breeden v. State*, 2014 Ark. 159, 432 S.W.3d 618.

[37]*Anderson v. State*, 2011 Ark. 488, 385 S.W.3d 783.

are unconvinced by appellant's assertion that, had the jury been polled, there was a "reasonable probability that a mistrial would have been granted."

Lastly, appellant contends that the circuit court erred in denying his Rule 37.1 petition without making sufficient written findings. Arkansas Rule of Criminal Procedure 37.3(c) provides that an evidentiary hearing should be held in postconviction proceedings unless the files and record of the case conclusively show that the prisoner is entitled to no relief. When the circuit court denies relief without holding an evidentiary hearing, it "shall make written findings to that effect, specifying any parts of the files, or records that are relied upon to sustain the court's findings."[38] When the circuit court fails to make such findings, it is reversible error, except in cases where it can be determined from the record that the petition is wholly without merit or which the allegations in the petition are such that it is conclusive on the face of the petition that no relief is warranted.[39]

First, we observe that in its order denying appellant's petition for postconviction relief, the circuit court made extensive findings as to each of appellant's claims of ineffective assistance of counsel. Second, other than making the conclusory statement that the circuit court did not make the required sufficient written findings, appellant failed to direct this court's attention to any specific respect in which the written findings were insufficient. Therefore, we do not consider the issue further.

Based on the foregoing, we hold that the circuit court did not err in denying appellant's petition for Rule 37.1 relief.

---

[38]Ark. R. Crim. P. 37.3(a); *see Johnson v. State*, 2014 Ark. 74.

[39]*Johnson, supra.*

Affirmed.

ABRAMSON and GLADWIN, JJ., agree.

*Randy Duck*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.